DILL (INTERNATIONAL GRAIN CEILING CO. v.). See Case No. 7,053.

## Case No. 3,912.

### In re DILLARD.

[2 Hughes, 190; 9 N. B. R. 8; 6 Am. Law T. Rep. 490; 21 Pittsb. Leg. J. 82.][1]

Circuit Court, E. D. Virginia. Oct., 1873.

BANKRUPTCY—EXEMPTIONS—JURISDICTION —PROPERTY INCUMBERED BEYOND VALUE —VOLUNTARY BANKRUPTCY.

1. The amendment of March 3, 1873 [17 Stat. 577], construed, and *held* to only allow the exemptions granted by state laws in 1871, as against judgments of state courts when such judgments are rendered after the passage of the amendment of 1873. In re Kean [Case No. 7,630], by Rives, J., reversed. A construction of the amendment of 1873, as giving the exemption of 1871 against liens of force prior to the adoption of the state laws granting the exemptions, *held* to be "contrary to reason and justice, and the fundamental principles of the social compact," on the authority of Gunn v. Barry [15 Wall. (82 U. S.) 610]. The amendment of March, 1873, so far as it is declaratory of the meaning of the act of June, 1872 [17 Stat. 334], *held* null and void.

[Cited in Re Kerr, Case No. 7,729; Re Duerson, Id. 4,117; Re Martin, Id. 9,552; Re Shipman, Id. 12,791.]

2. A court of bankruptcy has the power to take possession of the property of the bankrupt, subject to valid liens exceeding the value of the property, and to dispose of it for the purpose of satisfying, as far as possible, these liens. But, as a matter of discretion, under such circumstances, the power ought never to be exercised.

[Cited in Hudson v. Schwab, Case No. 6,535.]

3. An order directing the sale of property so incumbered is not void for want of jurisdiction in the court granting it, but will be set aside on petition for review as an improper exercise of the discretion granted the district court.

4. In voluntary petitions in bankruptcy, the rights of the bankrupt to the disposition of his property cease on the filing of the petition. In involuntary petitions, such right ceases upon the adjudication.

Certain creditors of the bankrupt [George W. Dillard,] have made application to the supervisory jurisdiction of the circuit court in this case, for a reversal of a decree of the district court sitting in bankruptcy, allowing a homestead exemption to the bankrupt. [Case unreported.] There are several cases submitted, the facts agreed upon being the

[1] [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission. 21 Pittsb. Leg. J. 82, contains only a partial report.]

same, or nearly so, in all of them. The opinion of the court is expected to decide all the questions which arise in the cases submitted, whether they are to be found in the case immediately at bar or not.

The agreed statement of facts is as follows:

Upon the petition of Israel M. Parr, surviving partner of McConkey & Parr, and others, to revise and set aside certain orders entered by the district court of the United States for the eastern district of Virginia, entered on the 11th day of February, 1873, March 1st, 1873, and July 31st, 1872. On the —— day of ——, Israel M. Parr, surviving partner of the firm of McConkey & Parr, filed his bill in the circuit court of Essex county, Virginia, against George W. Dillard and others, setting forth that he was a creditor, by judgment duly docketed, for one thousand four hundred and eighty-five dollars and seventy-seven cents, of the said George W. Dillard; that thereafter, to wit. on the 10th day of November, 1869, the said Dillard had executed two deeds of trust conveying away all his real estate; that the said deeds were fraudulent and void as against the creditors of the said Dillard, and praying that the said deeds should be set aside, and the real estate of the said Dillard subjected to the payment of the debt due to the plaintiff, and such other debts as should be liens upon the same. The suit proceeded regularly. An account was directed to be taken by a commissioner of the court, of the liens and their respective priorities, and of the fee simple and annual value of the real estate. Such account was regularly taken and reported to the court, and on the 14th day of November, 1871, there being no exception to the report. the same was confirmed by the court and a decree entered declaring the said deeds fraudulent and void, as to the creditors having prior liens. and decreeing that unless the said George W. Dillard should within four months pay off the judgments reported as liens upon the said real estate, James M. Matthews and Thomas Croxton, as commissioners of the court, should proceed to sell the same. The account of the liens and of the value of the land as reported by the commissioner and confirmed by the court, showed the amount of the liens to be twelve thousand five hundred and sixty-eight dollars and fifty cents, and the fee simple value of the real estate to be, in November, 1871, three thousand and ninety-six dollars, and in May, 1867, seven thousand seven hundred and forty dollars, but subject to the contingent right of dower of the wife of the said Dillard. On the 26th March, 1872. George W. Dillard filed his petition and was adjudicated a bankrupt, claiming to have a homestead exempted to him according to the laws of Virginia. On the 11th April, 1872, an injunction was awarded by the bankrupt court to restrain the commissioners of the circuit court of Es-

sex from selling the real estate under the decree of November 14th, 1871. On the 23d April, 1872, a rule was entered that the creditors show cause why the real estate of the said Dillard should not be sold free from incumbrance. Before any action was taken under that rule, to wit, on the 20th May, 1872. McConkey & Parr, Thomas Croxton, executor of Mace Clements, Christopher Newbill, executor of Wm. Newbill and Nathan Parker, all creditors of the said George W. Dillard, having judgment liens upon his real estate, filed objections to such sale, for the reason in part that the circuit court of Essex has already decreed the said lands to be sold to pay their debts, which were liens, and because the judgment liens exceeded the value of the real estate. All filed with their application proofs of the action of the circuit court of Essex. On the 28th May, 1872, they, with other judgment lien creditors, proved their debts before the register in bankruptcy, not waiving, but expressly reserving their liens and claiming the benefit of them, and of the said decree of Essex circuit court, as fully as they existed before the filing of the petition in bankruptcy of the said George W. Dillard. The amount of such debts exceeded seven thousand dollars, besides interests and costs. No action has since been taken under the said rule. On the 31st July, 1872, upon the application of the bankrupt, and the recommendation of the register, that "two thousand dollars in addition to the exemptions heretofore granted" should be allowed, and with the assent of the assignee, without any notice whatever to any of the creditors, the following order was entered by the judge of the district court in bankruptcy: "The two thousand dollars recommended by the register will be allowed in any bid made by the bankrupt." On the 11th February, 1873, after due notice to the assignee of the bankrupt, the petitioners applied to the judge in bankruptcy to enter such an order as would enable the circuit court of Essex to enforce its decree of 14th November, 1871, by selling the lands and distributing the proceeds according to law. The court refused to enter such an order, but in lieu thereof entered an order directing the assignee to unite with the commissioner of the circuit court of Essex in making the sale directed by the said decree. On the 1st March, 1873, the judge, upon the application of the assignee, entered an order suspending the order of February 11th, to enable the assignee to invoke the supervisory jurisdiction of this court. The assignee declined doing so, and then your petitioners filed their petition for that purpose.

We, C. G. Griswold, attorney for the petitioners, and James M. Matthews, assignee in bankruptcy of the said George W. Dillard, agree to the foregoing statement of facts as being the facts appearing in and by the record of the proceedings in the cause, and that the same may be received and acted upon by the honorable judge of this court, in considering and deciding upon the said petition.

C. G. Griswold, for petitioners.
James M. Matthews, for assignee.

BOND, Circuit Judge. Upon this statement of facts the circuit court is asked to reverse the decree of the district court allowing the bankrupt a homestead exemption. 1st. Because the bankrupt court has no jurisdiction over the real estate of the bankrupt, which at the time of his application or of the petition in involuntary bankruptcy, was decreed to be sold by a state court for the benefit of the creditors holding liens upon it. With this view we do not agree. It is the right of the bankrupt court, by reason of its exclusive jurisdiction in matters of bankruptcy, to take possession of the whole estate of the bankrupt wherever and however situated or incumbered. In this respect a decree for the sale of the bankrupt's estate is not of any higher dignity and stands in no better position than the judgment of a court which gives the creditor a lien in the first place. It has never been questioned that the bankrupt court could take possession of the property of a bankrupt incumbered by the liens of judgment creditors, and the fact that process has been had to enforce those liens can make no difference. It is not a question of jurisdiction or of right, but of discretion. The fact which determines the exercise of this discretion is whether or not the general creditors of the bankrupt have any interest to be promoted by it. If it appear to the court that the liens are valid, and that they exceed in value the real estate incumbered by them, there can be no reason for the exercise of the powers of the bankrupt court. To take possession of the property in such case and sell it through the assignee, so far from benefiting the creditors of the bankrupt himself, would only add to the costs, and would diminish the dividends of the one, without adding to the possible surplus of the other. If any fraud were alleged on the part of the persons appointed to sell the estate by the state court, or any want of good faith on the part of the creditors seeking its jurisdiction, or if in any way it could be made to appear to, the bankrupt court that the general creditors would be benefited by sale through the assignee in bankruptcy rather than by the persons named in the decree of the state court, the bankrupt court, which is the guardian both of the interest of the creditors and of the bankrupt, ought to exercise its power and maintain its jurisdiction. But if these reasons are wanting, and the facts appear to the contrary, it seems to the court that the general creditors have no interest in the proceedings in the state court. Whatever becomes of the property, whether it be sold for less or more, can make no difference in their dividends of the bankrupt's estate.

It seems to the court that in the case at

bar, and in the other cases submitted, where similar proceedings in state courts have been had by lien creditors, prior to the adjudication in bankruptcy, to sell the estate of an insolvent debtor which was incumbered beyond its value, the bankrupt court ought not to have interfered. It should have allowed the lien creditors to have pursued their remedy. The assignee in bankruptcy took only such estate in his realty as the bankrupt himself had. In this case confessedly this was of no value. The bankrupt's estate was incumbered by liens admitted to be valid, greatly beyond its value, and without paying them off the assignee had nothing of value in the estate. Neither he nor the general creditors propose to do this. But in the case at bar, and others submitted with it, the bankrupt, by his assignee, claims that his real estate ought to be administered in the bankrupt court, because it is there only he can have the benefit of the homestead exemption which is supposed to be allowed by the act of March 3, 1873, amendatory of the bankrupt act [of 1867 (14 Stat. 517)]. It appears in this case, from the agreed statement of facts, that not only was the real estate of the bankrupt encumbered by valid liens far beyond its value, prior to his application for the benefit of the bankrupt law, but that on the 10th day of November, 1869, nearly two years and a half before his application in bankruptcy, the bankrupt had executed two deeds of trust, conveying all his estate in this property to the parties mentioned therein. These deeds, indeed, were subsequently, by the state court, declared fraudulent and void as to creditors, but they are valid as to him; and he is not to be heard in a bankrupt court to ask that an estate, the value of which he has received once in the debts represented by judgment liens upon it, and again by the consideration expressed in the deed which conveyed all his estate to another, shall be assigned to him, nevertheless, as a homestead. The homestead exemption was a bounty to unfortunate but honest debtors. It was not intended for the benefit of fraudulent bankrupts.

In some of the cases submitted with the one at bar, where the liens of judgment creditors, matured before adjudications in bankruptcy, are greater in value than the real estate, there has been no subsequent conveyance by deed of trust, as in this case. The claim is, that under the provisions of the act of March 3, 1873, the bankrupt is entitled to the exemption allowed by the act of assembly of Virginia, commonly known as the homestead exemption, passed June 27, 1870, and that this homestead exemption has precedence of, and is paramount to, the liens of the judgment creditors. The bankrupt in this case, and in the other cases submitted, were adjudicated bankrupts prior to the passage of the act of March 3, 1873. In our opinion, the relation of the bankrupt to his property is fixed the moment he files his

petition in voluntary bankruptcy; and in involuntary bankruptcy so soon as he is adjudicated a bankrupt. The rights of his creditors to his estate are determined at the same time. What the homestead exemptions are at these times, both the bankrupt and his creditors are presumed to know. He petitions and they resist, or they petition and he resists, in the bankrupt court, with a full knowledge of the then existing law of bankruptcy. To repeal all exemptions after the bankrupt had petitioned and was entitled to an exemption by law, would be an injustice to him. To give him an exemption not allowed by law at the time of his application when too late for his creditors to resist his adjudication as a bankrupt, would be equally unjust to them. Every bankrupt, then, and his creditors, it seems to us, ought to be and are concluded, as to his and their interest in the bankrupt's estate, by the law of bankruptcy existing at the time of his application or adjudication as a bankrupt. The bankrupt, if he has acted in good faith, is entitled to a discharge from all his debts. His creditors are entitled to the proceeds of all his property except that which the then existing law exempts from their claims. By filing his petition he asks that this may be so. By proving their debts the creditors assent also. By the 14th section of the bankrupt act, all the estate of the bankrupt is conveyed to the assignee. It is provided, also, that such assignment shall relate back to the commencement of proceedings in bankruptcy. Section 27 provides that such property (meaning that property which, by the then existing law of the state, was not exempted from levy upon execution, and which, by force of the bankrupt law, had come into the hands of the assignee) shall be divided amongst the creditors whose claims shall have been proved and allowed. It seems evident from these two sections that what is surrendered by the bankrupt at the time of bankruptcy shall be distributed to his creditors, and that what is then exempt by law he shall retain. The exemption allowed is not a matter in the discretion of the court. It is a matter of right so far as both the creditors and bankrupt are concerned, and the amount of the exemption, the property out of which it shall come, and the description of person who may claim it, are all to be determined by the law existing when the bankruptcy is adjudicated. Under this view, therefore, all bankrupts who have been adjudicated such since the passage of the act of the general assembly of Virginia, passed June 27, 1870, commonly known as the "Homestead Act," are to be allowed the exemption provided therein against all claims of creditors created subsequent to its passage. The supreme court of the state has determined there is no property in Virginia exempt from levy and execution upon debts created

DILLARD (Case No. 3,912)

antecedent to the passage of that statute, and therefore there can be none under the bankrupt law, which follows the exemption laws of the states. So far this court has held heretofore. It is insisted now, however, that the act of March 3d, 1873, has modified the bankrupt law in this respect. It is argued that since the passage of that act the exemption allowed by law is that exemption which was provided by state laws of 1871. and that this exemption shall take precedence of and be paramount to all liens by judgment or decree of any state court. So far as this act of March 3d, 1873, is declaratory of the meaning of the bankrupt law, of which it is an amendment, it is void. If it declare the law to mean what the courts have already construed it to mean, then it is useless. If it undertake to construe the bankrupt act and its amendment differently from the courts, it is void. To declare what the law is, or has been, is a judicial function. To declare what it shall be hereafter is legislative. Cooley, Const. Lim. 94. There have already been numerous decisions of the United States courts construing these exemption clauses in the bankrupt act. To test the soundness of these decisions, the appeal is to the appellate courts of the United States, but not to congress. Prior to the act of 8th June, 1872, the exemption allowed a bankrupt both as to amount and the estate out of which it was to be taken, and the description of person to whom it was to be allowed was fixed by state laws in force in 1864. The bankrupt act was decided to be uniform by reason of this characteristic. Such state laws as were in force in 1864, governed, in these three respects, the allowance of exemption in bankrupt courts. The act of 1872 merely changed the date to embrace state laws of exemption in force in 1871. But who was to have exemption, out of what property, and to what extent, remained unaltered, the declaratory part of the act of 1873 to the contrary notwithstanding.

It is contended at bar that the act of March 3, 1873, is not an act which gives wider scope or more force to the state exemption laws, which heretofore have been the only authority for homestead exemption in the bankruptcy courts. but that it, itself, provides a statutory exemption paramount to all liens of judgments and decrees of whatever date, and is only limited in amount by the provision of the state statute. If the act of March 3. 1873. intends to give the state exemption laws quo state laws a force and power which the state could not give them, then it is void. because it has been decided by the supreme court in Gunn v. Barry [15 Wall. (82 U. S.) 610], that to give a bankrupt an exemption from debts or liens created antecedent to the passage of the exemption law is to impair the obligation of a contract. This the states are forbidden to do by the constitu-

tion of the United States. No act of congress can enable them to do it, in the face of this constitutional provision, by declaring that state statutes shall have this force. If it be maintained, on the other hand, that the act of March 3, 1873, although it refers to the act of 1872, itself an amendment to the bankrupt act, which had always been construed as directing the bankrupt court to look to the exemption law of the states for the description of person who might claim exemption, and for the amount and species of property to be exempted, provided a direct statutory exemption of so much property in value as was exempted by state laws, and that this exemption was to override and be paramount to all antecedent liens of judgments and decrees, we meet this difficulty. The supreme court of the United States, in Gunn v. Barry [supra], speaking of a law of Georgia to which was given this construction. says: "It (meaning the statute of Georgia) withdraws the land from the lien of the judgment and thus destroys a vested right of property which the creditor had acquired in the pursuit of his remedy. It is, in effect, taking a person's property and giving it to another without compensation. This is contrary to reason and justice, and to the fundamental principles of the social compact." We must not, if we can avoid it, give to the act of congress such a construction as would be contrary to reason and justice. We must not suppose they intended to violate the fundamental principles of the social compact. Yet, to say congress has provided, by the act of March 3. 1873, that every bankrupt shall have his property restored to him, freed from the liens vested in his creditors prior to the. passage of that act. is to hold that they have done as the legislature of Georgia had done, i. e., enacted a law contrary to reason and justice, and, in the view of the supreme court. subversive of the fundamental principles of the social compact. Gunn v. Barry [supra]. Such a view cannot be entertained. There is but one other construction to be given to the statute, and that is. that like all statutes it is prospective. The statute itself, after declaring what "should" or ought to be the exemption. declares that such it "shall be" in future, i. e. after the passage of that act; that it is intended to provide that no judgment or decree of any. state court, rendered after the passage of that act, shall debar a bankrupt of his exemption to the extent allowed him under the statutes of the state where he resides. This can be promotive of no hardship. Every creditor will know what, in future, is the effect of his judgment lien acquired since the passage of the act of March 3. 1873. Every decree of a state court to enforce the payment of a debt, or the obligation of a contract, created or entered into since the passage of that act, will be made in view of the supreme law. The statute of Virginia gives an exemption out of the property of the bankrupt. It does not give it to him out of other people's

property. Where his property is incumbered by a lien, it is only the bankrupt's sub modo. The lien creditor, in the language of the supreme court, has a vested interest in it also, and the bankrupt can only be allowed an exemption out of such estate as remains to him after the vested interests of others have been satisfied. With these views we do not think the bankrupts in these cases are entitled to the homesteads claimed, and will sign an order reversing the decree of the district court which allowed them.