## YEATMAN *v.* SAVINGS INSTITUTION.

1. Except where, within a prescribed period before the commencement of proceedings in bankruptcy, an attachment has been sued out against the property of the bankrupt, or where his disposition of his property was, under the statute, fraudulent and void, his assignees take his real and personal estate, subject to all equities, liens, and incumbrances thereon, whether created by his act or by operation of law.
2. Until he shall be paid, the pledgee is entitled to the possession of the property which he holds under a valid pledge as security for his debt against the pledgors, notwithstanding a subsequent adjudication of bankruptcy against them; and his refusal to surrender it to their assignees is not a conversion of it.
3. The failure of the pledgee to appear and prove his claim in the bankruptcy court forfeits only his right to participate in the distribution of the bankrupt's estate ordered by that court.

ERROR to the Circuit Court of the United States for the District of Louisiana.

On the 22d of July, 1871, O'Fallon & Hatch, a firm doing business at St. Louis, delivered, in pledge, to the New Orleans Savings Institution, a corporation created by the laws of Louisiana, having its place of business in New Orleans, two certificates of indebtedness issued by that State, each for the sum of $5,000, to secure the payment of a promissory note of the firm for $5,000, dated July 21, 1871, made payable to its own order on the 21st of January, 1872, and by it indorsed in blank. It is conceded that the corporation acquired the note and the certificates of indebtedness in due course of business, and for a valuable consideration. The firm and the individuals composing it were, Nov. 27, 1871, adjudged bankrupts by the District Court of the United States for the Eastern District of Missouri; and, upon the application of creditors, a receiver of the estate and effects of the bankrupts was, by an *ex parte* order, appointed with authority to demand and receive all property of every kind and description belonging to them.

An assignee in bankruptcy was afterwards appointed, to whom was conveyed, in the prescribed mode, all the real and personal estate of the bankrupts. First the receiver, and subsequently the assignee, each claiming to act under the authority of that court, demanded of the corporation, in the city of New Orleans, the surrender of the certificates. That demand, repeated more than once, and accompanied by copies of the orders of that court, was uniformly met with a refusal to surrender them, except upon the payment of the note for which they had been pledged. The corporation, by its president, expressed its willingness to surrender them, or have them sold, if an amount sufficient to pay the note was left in New Orleans, with the agent of the receiver and assignee, until proof of its debt should be made in the bankruptcy court. Neither the receiver nor the assignee assented to such an arrangement, but insisted upon the right to the actual custody of the certificates pending the proceedings in bankruptcy. The assignee, upon one occasion, authorized the president of the corporation to sell them, at not less than sixty-eight cents on the dollar, and retain the proceeds, without prejudice to the rights of either party, until the claim of the institution should be proven before a register in bankruptcy, and allowed. But a sale could not be made at that limit, and the authority to sell was withdrawn.

The corporation did not become a party to the proceedings in bankruptcy by proving its debt, or in any other mode.

This action by the assignee in bankruptcy, to recover of the corporation the value of the certificates, was based upon the ground that, by its refusal to surrender possession of them, it had converted them to its own use, and become liable therefor.

The corporation insisted that, having obtained the certificates in due course of business, and for a valuable consideration, it was entitled to hold them until the note should be fully paid.

There was a finding in favor of the corporation; and, judgment having been rendered thereon, Yeatman sued out this writ of error.

*Mr. Given Campbell* for the plaintiff in error.

*Mr. Thomas Allen Clarke* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

Counsel for the plaintiff in error has raised numerous questions for our consideration, which, under the view we take of the case, it is not necessary to determine. The sole question which, under the pleadings, it seems essential to decide, is, whether the savings institution, by its refusal to surrender the certificates, can be held to have converted them to its own use.

We are of opinion that this question must receive a negative answer. The savings institution, by virtue of the pledge, acquired a special property in the certificates, and, until the payment of the note for $5,000, was not bound to return them either to the bankrupt, the receiver, or the assignee in bankruptcy. Such are, beyond doubt, its rights at common law, as well as under the Code of Louisiana, which declares that "the creditor who is in possession of the pledge can only be compelled to return it when he has received the whole payment of the principal as well as the interest and costs." Rev. Code La., sect. 3164.

These rights were not affected by any of the provisions of the bankrupt law. The established rule is, that, except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens, or incumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. *Brown* v. *Heathcote*, 1 Atk. 160; *Mitchell* v. *Winslow*, 2 Story, 630; *Gibson* v. *Warden*, 14 Wall. 244; *Cook* v. *Tullis*, 18 id. 332; *Donaldson, Assignee*, v. *Farwell et al.*, 93 U. S. 631; *Jerome* v. *McCarter*, 94 id. 734. He takes the property in the same "plight and condition" that the bankrupt held it. *Winsor* v. *McLellan*, 2 Story, 492. In *Goddard* v. *Weaver*, 1 Wood, 260, it was well said that the assignee "takes only the bankrupt's interest in property. He has no right or title to the interest which other parties have therein, nor any control over the same, further than is expressly given to him by the Bankrupt Act, as auxiliary to the preservation of the bankrupt estate for the benefit of his cred-

itors. It would be absurd to contend that the assignee in bankruptcy became *ipso facto* seised and possessed in entirety, as trustee, of every article of property in which the bankrupt has any interest or share."

These views find direct support in more than one provision of the Bankrupt Act. Among the rights which vest at once in the assignee by virtue of the adjudication in bankruptcy, and of his appointment as such assignee, is the right to redeem the property or estate of the bankrupt. Act of 1867, sect. 14; Rev. Stat., sect. 5046. And, in order that it may be exercised for the benefit of creditors, the assignee is given express authority, " under the order and direction of the court, to redeem and discharge any mortgage or conditional contract, or pledge, or deposit, or lien upon any property, real or personal, whenever payable, and to tender due performance of the condition thereof, or to sell the same subject to such mortgage, lien, or other incumbrance." Act of 1867, sect. 14; Rev. Stat., sect. 5066. This is a distinct recognition of the rights of the pledgee as against the assignee. Of course, where the pledge is in fraud of the bankrupt law, and consequently void, the assignee may disregard the contract of pledge, and recover the property for the benefit of creditors. Not so where the pledge, as in this case, was made in good faith, for a valuable consideration, and not in violation of the provisions of the bankrupt law.

The savings institution, therefore, incurred no liability by its refusal to surrender the certificates upon the demand of the receiver or the assignee. Such refusal affords no evidence of a conversion of them to its use.

Nor was its right to hold them impaired by its failure to appear in the bankruptcy court, or its refusal to prove its debt, in the customary form, against the estate of the bankrupts. The only effect of such refusal was to lose the privilege of participating in such distribution of the estate as might be ordered by that court. It had the right to forego that advantage, and look for ultimate security wholly to the certificates which it held under a valid pledge. If the assignee regarded them as of greater value than the debt for which they had been pledged, or if the interest of the creditors required prompt action, he had authority, under the statute and the orders of the court, to

tender performance of the contract of pledge, or to discharge the debt for which the certificates were held. He had the right, perhaps, under the orders of the court, to sell them, subject to the claim of the defendant in error. If he desired a sale of them, and a distribution of the proceeds, or if he doubted the validity of the pledge, he could have instituted an action against the corporation in some court of competent jurisdiction in Louisiana, and thereby obtained a judicial determination of the rights of the parties. But none of these obvious modes of proceeding were adopted. The receiver and assignee seem to have acted throughout upon the theory that they had the right, immediately upon and by virtue of the adjudication in bankruptcy, to assume control of all property of every kind and description, wherever held, in which the bankrupt had an interest, without reference either to the just possession of others, lawfully acquired, prior to the commencement of proceedings in bankruptcy, or to the liens, incumbrances, or equities which existed against the property at the time of the adjudication in bankruptcy. We have seen that such a theory is unsupported by law.

The conclusions we have announced render it unnecessary to consider any other questions raised in the case.

*Judgment affirmed.*

Note. — In *Yeatman v. Butler, Yeatman v. Turnell, Yeatman v. Smith,* and *Yeatman v. Generès,* error to the Circuit Court of the United States for the District of Louisiana, which were argued by the same counsel as was the preceding case, Mr. Justice Harlan, in delivering the opinion of the court, remarked, that the same questions of law which arose in them had been determined in *Yeatman v. Savings Institution, supra,* p. 764, and that the ruling in that case controlled them.            *Judgment in each case affirmed.*