SIBLEY MACH. CO. (ROSE v.). See Case No. 12,051.

SIBLINE v. HERCULES MUT. LIFE ASSUR. SOC. See Case No. 6,402.

---

## Case No. 12,831.

SICARD v. BUFFALO, N. Y. & P. RY. CO.

[15 Blatchf. 525; 8 Reporter, 550.] ¹

Circuit Court, N. D. New York. Jan. 31, 1879.

APPEAL — FINDINGS OF FACT — CARRIERS — LIEN FOR FREIGHT — BANKRUPTCY — TITLE OF ASSIGNEE.

1. On a writ of error to the district court, where the judgment of that court is based on the report of a referee, the findings of fact made by the referee are conclusive, in this court, and only his conclusions of law can be questioned, and that only so far as they are challenged by exceptions filed in the district court.

[Cited in Lyons v. Lyons Nat. Bank, 8 Fed. 374.]

2. The terms of a contract by a railroad company for the carriage of coal, held to amount to a waiver of a lien on the coal for freight, so that the company, giving credit to the owners of the coal, and taking their note for such freight, had no right to rescind the contract and assert such lien, until the note was dishonored, before which time the title of an assignee in bankruptcy of said owners to said coal intervened.

3. The title of an assignee in bankruptcy, under section 5,044 of the Revised Statutes of the United States, relates back to the time the petition in bankruptcy is filed, so that no person can, by any subsequent act in respect to property which was the property of the bankrupt at that time, defeat such title, or place a lien on such property.

4. Where a defendant put his refusal to deliver property to its owner, on the ground of a lien on it for freight and also for storage, he cannot, in a suit against him to recover possession of the property, claim judgment on the ground that he had a lien for storage, it being held that he had no lien for freight.

[Error to the district court of the United States for the Northern district of New York.

[This was an action by George J. Sicard, assignee in bankruptcy of Clarence D. Simpson and Joseph W. Dennis, against the Buffalo, New York & Philadelphia Railway Company, to recover damages for the detention of coal.]

George Gorham, for plaintiff.

Sherman S. Rogers and Franklin D. Locke, for defendant.

BLATCHFORD, Circuit Judge. This is a writ of error to the district court. After the cause was at issue in that court, it was re-

¹ [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 8 Reporter, 550, contains only a partial report.]

ferred by the court, the counsel for the respective parties having stipulated to such effect in open court, to a referee, to hear, try and determine the same, the order of reference providing, that, on filing the report of the referee, judgment might be entered thereon, on application to the court, at any time. The referee reported in favor of the plaintiff. The defendant filed exceptions to the findings and decisions of the referee. The report and exceptions were brought before the court, on notice, and it made an order overruling the exceptions and confirming the report, and ordering that judgment be entered for the plaintiff in accordance with the report, with costs. Accordingly, a judgment was entered, that the plaintiff recover of the defendant 67.49 tons of egg coal, 12 tons of pea coal, 119.14 tons of chestnut coal, and 362.35 tons of stove coal, or, in case a delivery of said property cannot be had, the sum of $2,200.55, the value thereof; and, also, that the plaintiff recover of the defendant $165.43 damages for the detention of said property, and $90.69, costs. The only question, on the record, is, whether the report of the referee ought to be sustained, as against the exceptions filed. The findings of fact made by the referee are conclusive. Only his conclusions of law can be questioned, and that only so far as they are challenged by the exceptions filed in the court below.

The facts found by the referee are substantially these: From May 1st, 1875, to February 7th, 1877, the bankrupts were dealers in coal at Buffalo, and the defendant was a railroad corporation, operating a railroad between Emporium, in Pennsylvania, and Buffalo, and was a common carrier of merchandise, for hire. In May, 1876, it was agreed verbally between the bankrupts, as copartners, and the defendant, that, from that time forward, the defendant should transport for them, via Emporium, and over its railroad, to Buffalo, all hard coal sold by them; and that they should pay for all coal shipped from September 1st, 1876, to December 1st, 1876, 90¾ cents per gross ton, freight, and for all shipped between December 1st, 1876, and May 1st, 1877, $1 per gross ton. Such payment was to be made as follows, viz.: The freight earned during the preceding month was to be determined and settled for on the 10th day of each calendar month, when the firm was to make and deliver to the defendant its promissory note, payable 60 days after such 10th day, for the amount of such monthly freight. The parties did not provide, by the contract, for the carriage of any specific amount of coal during said term, but it was contemplated, by both parties, that the firm would furnish to the defendant, for carriage under said contract, a large amount of coal each calendar month during such term. Under this agreement the firm commenced the shipment of coal, and thereafter shipped all its coal over the defendant's road, and made monthly settlements up to and including January, 1877, and the defendant delivered to the firm all coal carried except that specified in said judgment.

No settlement was made in February for the January shipments, and the defendant did not, in February, 1877, render any statement of the coal carried in January. On February 7th, 1877, the bankrupts failed and made a voluntary assignment of all their joint and several property to one Moulton, for the benefit of their creditors, under the statute of New York. At the time such assignment was made, and at the commencement of the suit, the defendant had in its possession the coal specified in said judgment, all of which coal was transported by it from Emporium to Buffalo. The transportation charges on the coal carried in January for the firm, by the defendant, were $2,821.47, and on that carried in February, $651.25. The freight on the coal in the custody of the defendant at the time of the assignment was reasonably worth $561. The total amount owing to the defendant by the firm, at the time of such assignment, was $8,977.09, all of which was for carrying coal. Of this sum, all but that earned in January and February, 1877, was represented by notes given upon the monthly settlements made in November and December, 1876, and January, 1877, which notes had been endorsed by the defendant and discounted at its bank. One of the notes given by the firm to the defendant matured and was dishonored, and the defendant was charged as an endorser upon it, February 21st, 1877. The defendant thereupon refused to deliver any more coal to the firm or to Moulton, the assignee, until the charges were paid, and, payment not being made, it caused such coal as it had in its possession to be stored. It has never been tendered its charges, or any part thereof, by the firm, or by Moulton, or by the plaintiff. On the 14th of February, 1877, a petition in bankruptcy was filed by creditors, upon which the members of the firm were adjudged bankrupts, and the plaintiff was appointed their assignee, and received an assignment from the register May 12th, 1877, with title as of February 14th, 1877. Moulton assigned all his interest in the coal in question to the plaintiff. After qualifying as assignee, the plaintiff, on the 15th of May, 1877, demanded from the defendant the coal in its possession. The defendant claimed a lien upon the coal for the entire indebtedness, or, at any rate, for the reasonable worth of the transportation charged on the coal in its hands, and for its expenses in storing and caring for the coal subsequently to its delivery in Buffalo, and refused to surrender possession of it until these charges were paid. The prices charged by the defendant were the reasonable worth of carrying coal from Emporium to Buffalo, those being the points between which the coal in question was transported. The reasonable cost of the storage of the coal in its possession, up to the time of the plaintiff's demand, was $150. The reasonable worth of the coal in the defendant's possession at the time of the demand by the plaintiff was $3.75 per ton for egg coal, $4.00 for stove coal, and $2.90 for pea coal. The defendant has been compelled, as endorser, to

take up all the notes of the firm which it held at the date of the voluntary assignment. The referee found, as matters of law: (1) That the plaintiff is the owner, and is entitled to the immediate possession, of 67.49 tons of egg coal, 12 tons of pea coal, 119.14 tons of chestnut coal, and 362.35 tons of stove coal, in the possession of the defendant at the date of the plaintiff's demand thereof, and that the defendant has no lien thereon; (2) that the defendant wrongfully detains and withholds said coal from the plaintiff; (3) that the value of the coal so detained by the defendant is the sum of $2,200.55; (4) that the plaintiff is entitled to a judgment in his favor, awarding him the possession of the said coal, together with $165.43 damages for the detention thereof, or, if the delivery of the said coal cannot be had, then that he have judgment against the defendant for the value of the said coal, viz.: $2,200.55, with damages for the detention thereof, viz., $165.43, amounting, in all, to $2,365.98, with costs. The exceptions filed are (1) to the finding and decision that the defendant wrongfully detains and withholds said coal from the plaintiff; (2) to the finding and decision that, at the time of the plaintiff's demand, the defendant had no lien upon such coal; (3) to the finding and decision that the plaintiff is entitled to a judgment in his favor, awarding him the possession of said coal; (4) to the finding and decision that the plaintiff is entitled to have of the defendant $165.43 damages for the detention of said coal.

The defendant contends that Moulton and the plaintiff can have no other rights than the bankrupts possessed; and that, after the dishonor of the bankrupts' note on the 21st of February, 1877, the bankrupts could not have obtained possession of the coal from the defendant, because the default in the payment of the note authorized the defendant to rescind the contract, and assert its right to a lien on the coal, and to assume the same position as if there had not from the beginning been any special contract in respect to the coal found in the possession of the defendant when such note was dishonored. For the plaintiff, it is contended, that, by the terms of the original contract of carriage, as to giving credit, the defendant waived its lien for freight; that the dishonor of the note, and the insolvency of the firm, gave no right to the defendant to rescind the contract and assert a lien; and that the bankruptcy intervened before the note was dishonored, and the title of the plaintiff to the coal, under the bankruptcy, relates to a time before the note was dishonored.

The view urged on the part of the defendant is, that, by the original agreement, the defendant merely agreed to claim no lien if payment should be made at a specified time, that is, it agreed to claim no lien until default in payment should be made, but reserved its right to assert a lien when such default should occur. But, if this view were sound in law, as applied to the claim to a lien for freight, the defendant cannot assert such lien as against the plaintiff. It may be admitted that the plaintiff took his title to the coal subject to all the equities and liens of the defendant, as respected the coal, as the property of the bankrupts, on the 14th of February, 1877. Yeatman v. Savings Institution, 95 U. S. 764, 766. At the very least, however, the lien was suspended, and in abeyance, and incapable of assertion, until the 21st of February, 1877, even as against the bankrupts. Before that date the title of the plaintiff intervened, either through Moulton, or directly under the bankruptcy proceedings, or both. But the bankruptcy title must be regarded as the paramount one, and the voluntary assignee must be regarded as having assigned to the plaintiff all his interest in the coal in question, because the plaintiff had the paramount right to it; under the bankruptcy statute. The bankruptcy assignment to the plaintiff related back to February 14th, 1877, and, by operation of law, vested the title to the coal in the plaintiff, as of that date. Section 5044. Although the bankruptcy assignment was not made until May 12th, 1877, it carried to the assignee the property owned by the bankrupt on February 14th, 1877, and carried it in the condition in which it stood on that day, so that no person could, by any subsequent act in respect to such property, defeat such title. The defendant could not, by an act of rescission on the 21st of February, 1877, place a lien on the property, as against the title of the plaintiff. If such lien did not exist on the 14th of February, it could not arise afterwards, unless by the act of the assignee in bankruptcy. This doctrine is well settled in numerous cases. It is illustrated by the decision of this court in Howard v. Crompton [Case No. 6,758]. In that case, a person who was a debtor to a bankrupt at the time the proceedings in bankruptcy were commenced, thereafter and before the adjudication of bankruptcy paid the debt to the bankrupt, without any actual notice or knowledge of the bankruptcy proceedings, and in the usual course of business, but the money thus paid did not come to the hands of the assignee in bankruptcy. It was held that the assignee could recover the debt from the person who so paid it to the bankrupt. The principle is the same as in the present case.

It is contended by the defendant, that, if there was no lien for the freight, there was a lien for the storage, as against the plaintiff; that, if the defendant had any lien upon the coal for any amount whatever, the judgment below is erroneous; and that it can assert any lien it had, whether its refusal to deliver the coal was placed upon the proper ground or not. The argument is, that, whatever rights the plaintiff has, attached as of the 14th of February, 1877; that any delivery after that time to the bankrupts, or to Moulton, would not have

barred the plaintiff's right of action; that the plaintiff made no demand until May 15th; that the defendant stored the coal about February 21st; that the reasonable cost of such storage from that time until May 15th was $150; and that for that amount the defendant had a lien. The answer to this view is, that the referee finds, that, when the plaintiff made his demand on the defendant, the defendant put its refusal to deliver, not on the ground of a lien for storage merely, but on the ground of a lien for the freight on the coal, and also for storage, and that it refused to surrender possession of the coal until both the transportation charges and the storage expenses were paid. If a lien for the storage alone had been asserted, non constat the plaintiff would have paid the $150.

The foregoing views dispose of the first three exceptions to the referee's report. The fourth exception is to the finding and decision that the plaintiff is entitled to have of the defendant $165.43 damages for the detention of said coal. The ground of the exception is not stated. The exception admits that there is a finding by the referee that the plaintiff sustained $165.43 damages by such detention. What the damages were, or how their amount was arrived at, does not appear. The complaint alleges that such damages are $1,000, and claims judgment for them. If damages to the amount found were sustained, the plaintiff is entitled to recover them, and the finding that the damages were $165.43 is conclusive, on this writ of error.

The judgment below is affirmed, with costs.