## In re COGLEY.

(District Court, N. D. Iowa, Cedar Rapids Division. March 28, 1901.)

BANKRUPTCY—PROPERTY INCUMBERED BEYOND ITS VALUE—DUTY OF TRUSTEE.
    A trustee in bankruptcy is not required to take charge of or sell any portion of the estate so heavily incumbered with valid liens that nothing can be realized therefrom for the unsecured creditors, and hence it was improper for a referee to grant an order of sale where it was made clear from the appraiser's return that the mortgage liens thereon largely exceeded its value, and thus permit him to carry through a sale for the benefit of the mortgagees, saving them costs of foreclosure, and then pay the costs of sale from the proceeds of assets on which the mortgagees had no lien whatever.

In Bankruptcy.

Struble & Steiger, for bankrupt and trustee.

SHIRAS, District Judge. Although no exceptions have been filed on behalf of creditors to the action had before the referee in this case, the record cannot be approved without calling attention to a practice which has been followed in this and some other cases that merits disapproval and condemnation. The report of the trustee shows that aside from the exempt property set aside to the bankrupt, the assets of the estate consisted of 80 acres of land situated in Tama county, Iowa, and some 200 bushels of corn. The trustee filed a report before the referee, averring therein that the realty was subject to the lien of two mortgages amounting in the aggregate to $5,353, and to the lien of a judgment for $195; it being further averred that these liens were valid, and that the same had been allowed as secured claims upon the realty. Under these circumstances the trustee prayed that appraisers of the property should be appointed, and that he should be authorized to sell the property at private sale. The referee granted the orders asked, and the appraisers returned the value of the realty at the sum of $2,800, and of the personalty at $40. The trustee reports that he then sold the realty for the sum of $3,600 and the personalty for $40, but he also reports that in fact the sum bid for the realty was not paid to him, but the arrangement was that the purchaser was to pay this amount to the mortgagee; it being stated by the trustee in his report that:

"No consideration whatever was received by the undersigned in consideration of the said sale, beyond the assumption of the said mortgages to the amount of $3,600, this being a part of the mortgaged incumbrance on the said bank."

It is further stated in the report of the trustee that he received from the sale of the personalty belonging to the estate the sum of $40, out of which he paid to his attorneys, for services connected with the sale of the property, the sum of $35, and the remaining $5 he retained as his own commission for making the sale in question. In other words, it is shown that all the money realized from the assets of the estate in which the unsecured creditors had any interest has been applied to the payment of fees and commissions in making a formal sale of the realty for the benefit of the mortgagees. It is well settled that in the administration of estates under the bankrupt act the trustee is not required to take charge of or sell any portion of the estate that is so heavily incumbered with valid liens that nothing can be realized therefrom for the unsecured creditors. Thus, in Glenny v. Langdon, 98 U. S. 20–31, 25 L. Ed. 43–47, it is said:

"It has long been a recognized principle of the bankrupt law, says Robson, that the assignees of a bankrupt are not, in certain cases, bound to take the property of an onerous or unprofitable character, which would burden instead of benefiting the estate; and there are numerous decisions, English and American, which support the proposition."

In Sparhawk v. Yerkes, 142 U. S. 1–13, 12 Sup. Ct. 104–106, 35 L. Ed. 915–918, in speaking of the duties of assignees in bankruptcy, it is said by the court that:

"They are not bound, however, to accept property of an onerous and unprofitable nature, which would burden instead of benefiting the estate, and they could elect whether they would accept or not."

And in Sessions v. Romadka, 145 U. S. 29–39, 12 Sup. Ct. 799–801, 36 L. Ed. 609–613, it is held that:

"While, under the provisions of the bankrupt law, the title to this patent undoubtedly passed to the assignee in bankruptcy of Pinier, it passed subject to an election on his part not to accept it if in his opinion it was worthless, or would prove to be burdensome and unprofitable."

In exercising the election thus possessed primarily by the trustee, the general rule to be observed is well stated by Bond, Circuit Judge, in Re Dillard, 2 Hughes, 190, 7 Fed. Cas. 703, Fed. Cas. No. 3,912, as follows:

"It is not a question of jurisdiction or of right, but of discretion. The fact which determines the exercise of this discretion is whether or not the general creditors of the bankrupt have any interest to be promoted by it. If it appears to the court that the liens are valid, and that they exceed in value the real estate incumbered by them, there can be no reason for the exercise of the powers of the bankrupt court."

Applying the rule recognized in these decisions to the facts of the present case, it is clear that the trustee should not have burdened the estate in his hands by undertaking the sale of the realty in the mode in which it was done, and the referee should not have granted the order of sale asked by the trustee. It was certainly within the power of the trustee to have ascertained by reasonable inquiry whether the realty would probably sell for any sum in excess of the liens thereon, and, certainly, when the appraisers returned the value of the 80 acres at $2,800, it was made clear that the liens thereon largely exceeded its value. When, as in this case, there is no probability that any sum can be realized for the benefit of the unsecured creditors, then the trustee should not incur costs from which no good result can flow. It sometimes happens that the lienholders desire to obtain a title from the trustee, either through a public sale made by him, or by a direct conveyance; and in such cases the trustee can generally obtain some small sum for conveying the title, which will inure to the benefit of the general creditors. In all such cases he should, however, exact payment of the costs from the lienholders to whom he conveys the title as a condition of such transfer. In the case at bar it appears that the trustee, presumably in pursuance of an understanding with the mortgagees, made an arrangement with the purchaser that he should obtain a title to the realty by assuming the payment of $3,600 to the lienholders. In other words, the trustee carried through a sale for the benefit of the mortgagees, saving them the costs of a foreclosure suit, and then paid the costs of this sale out of the money in his hands realized from the sale of assets on which the mortgagees had no lien whatever. If the creditors had excepted to this proceeding the action of the trustee and the referee would be set aside as a clear error on their part. No exceptions, however, have been taken to the proceedings had, and as the referee in his judicial capacity authorized the sale, and the purchaser is a third party whose rights have intervened, and as it is clear that the general creditors cannot be benefited by setting

aside the sale, the same will be affirmed; but the attention of the referees in this district is called to this matter, in order that such errors in the exercise of the discretion conferred upon them and upon trustees may be avoided in the future.