### In re GOLDSMITH.

#### (District Court, N. D. Texas. October 29, 1902.)

#### No. 11.

**1. BANKRUPTCY—SECURED CREDITORS—PROOF OF CLAIMS.**
    Where property of a bankrupt, on which is a mortgage given by him, is sold in the bankruptcy proceedings, free of the incumbrance, the mortgagee, who intervenes merely to subject the proceeds to part payment of his debt, is not bound to prove his claim, as required by Bankr. Act 1898, § 57 [U. S. Comp. St. 1901, p. 3443], but has only to plead and prove his debt and security as in an ordinary suit; such a payment to a secured creditor not being a dividend, within section 65a [U. S. Comp. St. 1901, p. 3448], providing that dividends of an equal per cent. shall be declared on all allowed claims, except such as have priority or are secured.

In Bankruptcy. On certificate from referee.

I. Goldsmith was adjudged a bankrupt on his voluntary petition on the 26th day of September, 1898. Among his assets, the bankrupt scheduled two certain lots in the city of Dallas. It is stated in the schedules that these lots are subject to a lien created by a deed of trust in favor of I. Hirsch & Son, executed on the 3d day of January, 1897, to secure the payment of certain notes dated February 5, 1897. The bankrupt received his discharge on the 13th day of June, 1899. On the 8th day of August, 1900, the trustee made application to the referee for an order to sell these lots free from incumbrance. Notice of the application was given by the referee to all creditors, including I. Hirsch & Son. He fixed a day for the creditors to show cause, if any they had, why the application of the trustee should not be granted. No creditor appeared, nor was any opposition filed; and the referee directed the trustee to sell the property either at public or private sale, which was done. The sum of $475 was realized, and the sale was approved by the referee. On the 24th day of July, 1901, I. Hirsch & Son filed their application with the referee for the proceeds of the sale, alleging that they have a lien by virtue of the deed of trust mentioned

above; the same being executed by the bankrupt to Victor H. Hexter, trustee, to secure the payment of a note for $4,000, dated January 27, 1897, and payable six months thereafter to the order of I. Hirsch & Son. Nothing is stated in the deed of trust, nor in the application of the creditors, I. Hirsch & Son, as to the consideration of the indebtedness, and no proof of claim was filed by them. Certain creditors filed opposition to the application of I. Hirsch & Son, and the issue thus made was heard before the referee. After hearing, he held that the application of I. Hirsch & Son could not be entertained, because they did not prove up their claim in accordance with the provisions of the bankruptcy law, and the rules and forms adopted by the supreme court of the United States. He therefore, by order, overruled the application; and to this order I. Hirsch & Son filed exceptions, and secured a certificate to have same reviewed by the judge. After hearing, the court held that the referee erred in refusing the application of I. Hirsch & Son for payment of the proceeds of the property on which they claimed to hold a mortgage, because of their failure to have their claim allowed by the referee within one year from the adjudication of the bankrupt, and decreed that the order entered by the referee be set aside, and directed the referee to hear and determine the application upon proof as to the existence of the indebtedness and mortgage claimed by I. Hirsch & Son. In pursuance of this direction, the referee heard their claim, and proof offered in support thereof. The claimants offered in evidence the note of I. Goldsmith, above mentioned, and also the deed of trust executed to secure the note on the lots sold by order of the referee, and from which the fund in the possession of the trustee was realized. There is a variance between the note described in the deed of trust and the note actually offered in evidence. This variance, however, is cured by an agreement of counsel that the note described in the application and that testified to by the deposition is one and the same instrument. Claimants also offered the deposition of Isaac Hirsch, showing that the consideration for the note was $4,000 loaned the bankrupt on the day of its making, that the deed of trust was given to secure these notes, and that no part thereof had been paid up to the 16th day of January, 1902, when I. Hirsch & Son received $1,200 in part payment. The referee, as he states in his certificate, is of the opinion that, "before a creditor can apply for funds in the possession of a bankruptcy court which have been realized through its procedure, he must comply with that procedure, prove his claim, and have it allowed in the manner established by the act." I. Hirsch & Son failed and refused to file any other proof than that above indicated, and simply relied upon their evidence contained in the deposition and the note and deed of trust. The referee therefore entered an order refusing their application for the proceeds of the sale. Claimants asked to have this action of the referee reviewed by the judge, and the referee certifies the question as to whether he should have proceeded to hear the claim, notwithstanding their failure to prove the same as required by the bankruptcy act.

Victor H. Hexter, for claimants.

Thompson & Thompson, for trustee.

MEEK, District Judge (after stating the facts as above). As stated by the referee, when this matter was before the court on a former hearing it was the opinion of the court that, if I. Hirsch & Son had a valid mortgage upon the lots in question, they did not lose it by reason of their failure to submit proof of claim and have it allowed by the referee within one year from the adjudication of the bankrupt. The referee was therefore directed to hear and determine the application of I. Hirsch & Son for the proceeds of the sale, upon proof as to the existence of the indebtedness and lien claimed by them. It was made manifest by this ruling that the court did not consider it incumbent upon a lien creditor to comply with

the procedure of the bankruptcy act in the matter of proof and allowance of claims as provided in section 57 [U. S. Comp. St. 1901, p. 3443], in order to secure him in the enjoyment of his lien. The referee now holds that even though, under the law of this case as enunciated by the court, I. Hirsch & Son did not have to prove their claim and have it allowed within 12 months, under the provision of section 57 [U. S. Comp. St. 1901, p. 3443] to that effect, yet, when they repair into the bankruptcy court to secure the proceeds of property upon which they have a lien, their proof must be in conformity with the provisions of section 57 [U. S. Comp. St. 1901, p. 3443], and the rules enunciated and forms adopted by the supreme court of the United States.

Several facts disclosed by the record seem pertinent to the discussion of the question at bar, and to the fixing of a proper course of procedure in like cases. The indebtedness of the bankrupt to I. Hirsch & Son, as evidenced by the notes scheduled, was in the sum of $4,000. The property subject to the payment of this indebtedness was sold for the sum of $475. While the record does not disclose the appraised value thereof, yet the conclusion can safely be indulged that it was far less than the amount of the indebtedness the schedule shows this property was deeded to secure. If this were not so, it is to be presumed the referee would not have affirmed the sale thereof for the sum of $475. I. Goldsmith was adjudged a bankrupt on the 26th day of September, 1898. The trustee did not make application to the referee for an order to sell this property free from incumbrance until the 8th day of August, 1900, almost two years after the adjudication of the bankrupt. At the date of the order of sale the time within which I. Hirsch & Son might have proved their indebtedness, if they were compelled to comply with the provisions of section 57 of the act [U. S. Comp. St. 1901, p. 3443], had long since passed. The order of sale is not incorporated in the record, but it does not appear from the statement of its contents that it provided all liens upon the property sold should attach to the proceeds. It would appear from this recitation that the trustee must have realized there was no equity in the property if the lien were observed. He therefore made his application to sell, believing that I. Hirsch & Son had forfeited their lien by the failure to make proof of claim. I. Hirsch & Son evidently intended to rely upon their security, so far as it would go toward the payment of their debt, without resorting to the bankruptcy court. Upon being notified of the application of the trustee to sell the property free from liens, they were, no doubt, impressed with the belief that the referee would conclude there would be nothing realized from such sale for the general creditors, and so refuse the application, or else they determined to abide the action of the bankruptcy court, and follow the proceeds in event there was a sale.

The referee, in his findings, and in an exhaustive opinion submitted, takes the position that there is no distinction drawn in the bankruptcy act between a secured and an unsecured creditor, save and except as to the order of payment. He urges that "the secured creditor has no greater nor better right to procure or receive payments from the particular fund upon which he has a lien, and out of

which he expects his 'dividend,' as provided by section 65 of the act [U. S. Comp. St. 1901, p. 3448], without taking the preliminary steps of proving his claim, than an unsecured creditor has to proceed against and receive payment from the general fund without such proof." In support of his position the referee cites certain sections of the act relating to allowance of claims. The law so cited does nothing more than provide for the allowance of secured as well as unsecured claims. By these very provisions, secured claims can be allowed "for such sums only as to the court seem to be owing over and above the value of their [the creditors'] securities and priorities," so that secured claims, if proven, are not allowed to the extent of the value of the securities. While provision is made for the proving of secured claims, that fact cannot well be construed to mean that all secured claims must be proved before the contract of security can be enforced in a bankruptcy court or elsewhere. This, in effect, is the ruling of the referee.

Section 65a of the act [U. S. Comp. St. 1901, p. 3448] is as follows: "Dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured." On the question as to whether referees and trustees are entitled to a commission on sums realized from sales of securities, and paid to secured creditors, it has been held that such payments cannot be construed as dividends. In re Ft. Wayne Electric Corp. (D. C.) 94 Fed. 109; In re Fielding (D. C.) 96 Fed. 800; In re Utt, 45 C. C. A. 32, 105 Fed. 754. I concur with these authorities. If such payments are not dividends in this respect, they should not be construed as dividends for the purpose of compelling secured creditors to make proof of claims in order to realize them.

Under the bankruptcy act of 1867, it was held by the supreme court of the United States, in Yeateman v. Institution, 95 U. S. 764, 24 L. Ed. 589, as follows:

"The established rule is that [except in certain cases] the assignee takes the title subject to all the equities, liens, and incumbrances, whether created by operation of law or by act of the bankrupt, which exist against the property in the hands of the bankrupt."

The same rule obtains under the present act, the trustee taking the bankrupt's property subject to all liens and incumbrances which existed against the property in the hands of the bankrupt; the only exceptions being those set forth and enumerated in section 67 [U. S. Comp. St. 1901, p. 3449].

Mr. Justice Harlan, in Yeateman v. Institution, supra, says:

"Nor was it right to hold them [the certificates] impaired by its failure to appear in the bankruptcy court, or its refusal to prove its debt, in the customary form, against the state of the bankrupts. The only effect of such refusal was to lose the privilege of participating in such distribution of the estate as might be ordered by that court. It had the right to forego that advantage, and look for ultimate security wholly to the certificates which it held under a valid pledge. If the assignee regarded them as of greater value than the debt for which they had been pledged, or if the interest of the creditors required prompt action, he had authority, under the statute and the orders of the court, to tender performance of the contract of pledge, or to discharge the debt for which the certificates were held. He had the right, perhaps, under the orders of the court, to sell them, sub-

ject to the claim of the defendant in error. If he desired a sale of them, and a distribution of the proceeds, or if he doubted the validity of the pledge, he could have instituted an action against the corporation in some court of competent jurisdiction in Louisiana, and thereby obtained a judicial determination of the rights of the parties. But none of these obvious modes of proceeding were adopted. The receiver and assignee seem to have acted throughout upon the theory that they had the right, immediately upon and by virtue of the adjudication in bankruptcy, to assume control of all property of every kind and description, wherever held, in which the bankrupt had an interest, without reference either to the just possession of others, lawfully acquired, prior to the commencement of proceedings in bankruptcy, or to the liens, incumbrances, or equities which existed against the property at the time of the adjudication in bankruptcy. We have seen that such a theory is unsupported by law."

Circuit Judge McCrary, in his opinion in the case of Cottrell v. Pierson (C. C.) 12 Fed. 805, says:

"It will be observed that the judgment of the Springfield Manufacturing Company was obtained over two years before the commencement of the proceedings in bankruptcy, and that there is no charge of fraud or collusion in obtaining the rendition thereof. Did the failure of the plaintiff in said judgment to prove its claim in the bankruptcy court deprive it of its lien? I think not. There is high authority for the proposition that the lien of a creditor on real estate of a bankrupt is not lost by his failure to prove his debt. Wicks v. Perkins, 1 Woods, 383, Fed. Cas. No. 17,615, 13 Nat. Bankr. Rep. 280. The creditor in such a case may rely upon his security, and omit to prove his claim in bankruptcy, and by so doing he will lose only his claim against the general estate of the bankrupt. The law did not require the lienholder to prove his debt in order to save his lien. Having a judgment in the state court by which his lien was established, he had no occasion to apply to the bankruptcy court for aid in its enforcement. Whether the judgment creditor in this case could have caused execution to issue, and had his judgment enforced by sale pending the bankruptcy proceedings, may admit of some question, since the estate was, in a certain sense, in custodia legis. In the case above cited, Judge Woods expressed the opinion that the lien could have been enforced either before or after the end of the proceedings in bankruptcy. However this may be, I am clearly of the opinion that, after the proceedings in bankruptcy had terminated, there was nothing in the way of the enforcement of the lien of the judgment in the state court by execution and sale. Freem. Judgm. 28, 29; Second Nat. Bank of Louisville v. National State Bank, 14 Am. Law Reg. 281."

If secured creditors elect to rely upon their security, they are not parties to the bankruptcy proceedings at all. There is nothing compelling them to make proof, and they may enforce their liens, if otherwise valid, subject to the power of stay set forth in section 11 of the act. Collier, Bankr. (3d Ed.) 315.

The position of the referee receives support in the opinion of Judge Treat in the case of Davis v. Anderson, Fed. Cas. No. 3,623, but I take it this case is overruled by the decision of the supreme court above quoted. In the administration of bankruptcy estates it has been the rule to carefully consider whether there is a probable interest in incumbered property for the general creditors; if it be decided there is, then to sell same, after notice, either subject to or free from incumbrance, as conditions may indicate. If sold free from incumbrance, it ought to be provided that such incumbrances and liens as may be found to exist should attach to the proceeds of the sale. If it be decided there is no interest for the general creditors,

then the bankruptcy court should not undertake to administer the property for an absent lienor. To undertake its administration is an abuse of discretion justly condemned by the authorities. In re Dillard, 2 Hughes, 190, Fed. Cas. No. 3,912; In re Schaeffer (D. C.) 105 Fed. 352; In re Cogley (D. C.) 107 Fed. 73; In re Gibbs (D. C.) 109 Fed. 627. In the case at bar it is not to be seen from the record how either the trustee or the referee could conclude that there was any equity in this property for the general creditors of the estate in event the lien of I. Hirsch & Son was a valid and subsisting one. Some suspicion was cast upon the validity of the lien by counsel for the contesting creditors in the argument before the court. If there were doubts of its validity, the trustee could have instituted an action in a court of competent jurisdiction, and thereby obtained a judicial determination of that question. But this obvious mode of proceeding was not adopted, and the parties are now before the court on the proof made, which in no wise involves the question of validity.

How did I. Hirsch & Son come into the bankruptcy court? Not as secured creditors seeking to prove up a secured claim to the extent of its excess beyond the value of security held by them. The record indicates they have a claim, in a considerable amount, that could have been proved; but they have seen fit not to prove it, and will therefore forego the privilege of sharing with the general creditors in dividends declared. Yeateman v. Institution, supra. I. Hirsch & Son come as interveners seeking to subject certain funds, which arose from the sale of the property on which they claim a lien, to the part payment of an alleged indebtedness. They have a right to come in this way. Fisher v. Cushman, 43 C. C. A. 381, 103 Fed. 860, 51 L. R. A. 292; In re Oconee Milling Co., 48 C. C. A. 703, 109 Fed. 866. They must plead and prove the existence of their debt and security. Their proof must be evidentiary in nature, and support the material averments of their application. It cannot conform to any provisions of the act, or rule, or prescribed form, because there is none covering it.

The referee should have proceeded to hear the application of the claimants I. Hirsch & Son, and determine their right to the fund on the proof submitted. The referee will proceed as above indicated, and, in event he concludes from the evidence adduced before him that the fund in the registry of the court should be applied on the secured indebtedness of I. Hirsch & Son, he will tax all costs of the proceeding resulting in the sale of the property against them, because they now seek to take advantage of the acts of the bankruptcy court in reducing their security, and did not protest against such acts. The costs of this certificate will be taxed against the contesting creditors.