SPENCER v. DUPLAN SILK CO.

(Circuit Court, E. D. Pennsylvania. January 15, 1902.)

No. 6.

1. BUILDING CONTRACT—ARCHITECT'S CERTIFICATE.

Where a building contract provided for a certificate by the architects, on failure of a contractor, authorizing the owner to terminate the contract, a certificate given by one claiming to be the overseer and contractor for the architects was insufficient for that purpose, where there was no evidence that he occupied such position, or was authorized to act for them in such a manner.

2. FORFEITURE.

Where a building contract provided that, if the architects should certify that a failure of the contractor was sufficient ground for such action, the owner should be at liberty to terminate the contract, such certificate should be made only on the knowledge of the architects; and a certificate reciting that it is based on information received from the owner's agent is insufficient to justify a forfeiture.

3. SAME—NOTICE—SUFFICIENCY.

Where a building contract provides that in a certain contingency the owner may either enter on the premises and take possession, for the purpose of completing the work, of all tools and appliances thereon, or employ any other person to finish the work and to provide the materials therefor, a notice that the contract is declared terminated, and that the owner will take possession of the premises for the purpose of completing the work, is not sufficient to justify the taking of the contractor's materials.

4. SAME—BANKRUPTCY—MATERIALS OF BANKRUPT CONTRACTOR — RIGHT OF OWNER.

A building contractor, having a large quantity of materials on the ground intended for the building, was adjudged a bankrupt, on his voluntary petition, two days after the owner had declared the contract terminated, and two days before such owner took possession of such material, claiming the right to do so under the provisions of the contract, which had not been recorded. Held, under Bankr. Act, § 67a, providing that claims which, for want of record or for other reasons, would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens as against his estate, that such owner had no right to such materials as against the trustee.

5. SAME—ADVANCE BY OWNER—LIEN.

Where the owner of a building advanced more money to the contractor than was required by the contract, believing that the material on the ground was sufficient security therefor, but took no possession of such material until after the contractor was adjudged a bankrupt, such owner acquired no lien on such material by reason of such advance, as against the trustee.

Motion by Defendant for Judgment Non Obstante Veredicto.

R. E. Wright and T. M. B. Hicks, for plaintiff.
Frank Jacobs and W. J. Turner, for defendant.

J. B. McPHERSON, District Judge. The facts in this case were not disputed, and may be briefly outlined as follows: Bennett & Rothrock, who were contractors and builders, had agreed to erect a silk mill for the defendant in Hazleton, Pa. The fifth article of the contract is in these words:

"Art. V. Should the contractor at any time refuse or neglect to supply a sufficiency of skilled workmen, or of materials of the proper quality, or

fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after ——— days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and, in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

The contract was not recorded, and there is no evidence that any of the creditors knew of its provisions. On January 13, 1901, a large quantity of building material was upon the ground in the neighborhood of the mill; having been brought to that point for the purpose of being built into the structure in accordance with the contract. This material was the absolute property of Bennett & Rothrock; having been bought with their money, or on their credit, and delivered to them without conditions. Upon January 13th, Bennett & Rothrock, having filed a voluntary petition, were duly adjudged bankrupts; and W. H. Spencer, the present plaintiff, was afterwards elected their trustee. He thereupon demanded delivery of the material from the defendant, by whom possession had been taken, but delivery was refused, and the material was converted to the defendant's use by being built into the mill. This action of trover was accordingly begun to recover the value of the property thus converted.

Two defenses are urged to the suit, of which the first is founded on the fifth article of the contract, and upon certain action taken thereunder. This action was as follows: E. J. Lipps is named in the contract as general manager of the defendant company, and William Steele & Son as architects; these three persons being empowered to act for the purposes of the contract as agents of the silk company. Early in January, owing to the increasing financial difficulties of Bennett & Rothrock, work on the building had nearly ceased; and on January 6th, or perhaps even earlier, the contractors practically abandoned the enterprise. On January 11th Mr. Lipps, whose office was in South Bethlehem, some miles distant from Hazleton, addressed the following letter to the defendant:

"South Bethlehem, January 11, 1900.
"Duplan Silk Company, New York City, N. Y.: I, the undersigned, acting as overseer and contractor for the architects of the Duplan Silk Company building, in course of construction at Hazleton, Pennsylvania, do hereby

certify that the contractors, Bennett & Rothrock, of Williamsport, Pa., through their failure since January 8, 1900, to prosecute the work on said buildings in accordance with their contract with said Duplan Silk Company under date of August 30, 1899, have given just cause for the owners to terminate said contract as provided therein.        E. J. Lipps."

This letter states that Mr. Lipps was acting as "overseer and contractor for the architects for the Duplan Silk Company building in course of construction at Hazleton, Pa.," but there is no evidence that he had any such authority to act for the architects. He himself did not so testify, nor were the architects called to corroborate the allegation contained in the letter; while the contract declares him to be, what in truth he was, the general manager of the defendant, and one of its agents for the purposes of the contract. The letter just quoted was delivered by Mr. Lipps to himself as the general manager of the defendant, and thereupon, acting now as the Duplan Silk Company, he wrote and mailed to Bennett & Rothrock, upon the same day, the following letter:

"South Bethlehem, January 11, 1900.

"Messrs. Bennett & Rothrock, Williamsport, Pa.—Dear Sirs: Inclosed we send you a notification forwarded to us by Mr. E. J. Lipps, who acts as contractor and overseer for the architects in the construction of the mill at Hazleton.

"Yours, truly,        Duplan Silk Company."

This letter was inclosed with a communication also written by Mr. Lipps, the "notification" referred to therein being the first of the letters just quoted:

"South Bethlehem, January 11, 1900.

"Messrs. Bennett & Rothrock, Williamsport, Pa.—Gentlemen: We hereby notify you that on account of your failure or inability to prosecute the work on our silk mill building at Hazleton, Pa., according to our contract dated August 30th, 1899, we hereby terminate the said contract, and we will enter and take possession of above-named premises on Monday, January 15. 1900, for the purpose of completing the work comprehended under said contract in accordance with provisions made therein.

"Yours, truly,        Duplan Silk Company,
"E. J. Lipps, General Manager."

After these communications had been written and sent, Mr. Lipps came to Philadelphia, where the architects lived, and obtained from them the following paper:

"Philadelphia, January 11, 1900.

"Whereas, we are informed by E. J. Lipps, general manager for Duplan Silk Company, and who has been in charge of the construction of a certain building in Hazleton, Pa., which has been in the course of erection under a contract entered into between Duplan Silk Company and Bennett & Rothrock, contractors, that the contractors, in violation of their said contract, have since January 6th abandoned work upon the said contract, and that he has notified the contractors of the intention of the Duplan Silk Company to terminate the employment of the contractors and to complete the operation, we hereby certify our approval of said action, and declare that the neglect and failure of the contractors was sufficient ground for the same.

"Wm. Steele & Son."

This certificate is dated January 11th, and, in the absence of definite evidence to the contrary, that date may be assumed to be correct, although I have no doubt that the certificate was not ob-

tained until a later day. At all events, it was the last step in the transaction, instead of the first. Pursuant to these notices, the defendant entered upon the premises, and on January 15th took possession of the material heretofore referred to; this being two days after the title of the bankrupts had passed by operation of law to their trustee.

It must be conceded, I think, that there are serious difficulties in the defendant's path. In the first place, the express terms of article 5 make the architects' certificate a condition precedent to the termination of the employment, and it appears by the undisputed evidence that no such certificate had been given at the time the contractors were notified that their employment had been brought to an end. It is true that Mr. Lipps professed to give such a certificate as "overseer and contractor for the architects," but, as I have already stated, there is no evidence that he occupied this position, or was authorized to act for them in such a matter. On the contrary, the clear evidence is that he was simply the general manager of the defendant, and one of the overseers of the building upon its behalf. Neither, I think, can the certificate of the architects, assuming it to have been given on January 11th, be properly regarded as a ratification of Mr. Lipps' previous action; for the contract, as I think, certainly contemplates that the architects shall act upon their own knowledge in giving a certificate that is to be followed by such serious consequences to the contractors, while it will be observed that the architects do not profess to act upon what they themselves have observed of the contractors' failure to go on with the work, but plant themselves distinctly upon the information that is said to have been received from Mr. Lipps. It is doubtful whether such a certificate is sufficient to sustain a forfeiture of the contractors' property, and the decision of the case might, perhaps, be put upon this ground; but there are other difficulties that seem to be as serious, and one of them, perhaps, even more difficult to overcome. The fifth article of the contract, it will be noticed, provides that the company may, in a certain contingency, "enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor." This clause contemplates that the silk company might do either one of two things: It might enter upon the premises and use the material there to be found for the purpose of completing the work, or it might enter upon the premises and provide its own material for the same purpose. Now, it is plain from the foregoing notices that the declared purpose of the company is simply to "enter and take possession of the above-named premises," and that nothing whatever is said about an intention to take possession of the contractors' material. Under this ambiguous declaration, therefore, the entry might well be regarded as being simply for the purpose of providing other material and going on with the work; and I think it very doubtful whether such a notification, which must, of course, be strictly construed, as the purpose was to enforce a forfeiture, was sufficient to justify the silk company in taking possession

of the contractors' bricks, lumber, and other property on the ground.

But in addition to these difficulties there is the more serious objection that, even if the silk company is to be regarded as having correctly attempted to exercise a privilege reserved to it by the contract, nevertheless that privilege cannot be successfully invoked against the title of the trustee in bankruptcy. It is urged by the company that the title of the trustee is no greater than the title of the bankrupts, and that, as the privilege reserved by the fifth article of the contract could undoubtedly have been enforced against the bankrupts themselves, it is enforceable against the trustee also. It is, no doubt, true, speaking generally, that under section 70a, Bankr. Act, the trustee takes no better title to the property than the bankrupt himself possessed; but there are exceptions to this statement, as plainly appears from other provisions of the act. Under certain circumstances the trustee is the representative of the creditors, rather than of the bankrupt, in relation to the property of the estate, and he may unquestionably exercise rights and enforce a title that the bankrupt himself could neither enforce nor exercise. For example, with regard to property that the bankrupt has fraudulently transferred, the trustee may undoubtedly recover it for the estate, although it is also undoubted that the bankrupt himself could not undo his own fraudulent transaction. So, also, it is provided by the act, in section 67a,—and this closely concerns the subject now in hand,—that "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." Whatever may be the character of the right or the privilege reserved to the defendant company by the fifth article of the contract, it cannot be more binding upon the bankrupt estate than if it were a lien, and it may therefore properly be treated as if that were its true nature. Under the law of Pennsylvania, as repeatedly declared by its highest court, it is beyond controversy that this right to take possession of the bankrupts' material could not have been enforced against other creditors of the bankrupts seeking to enforce their own claims by appropriate legal process. If, for example, another creditor of the bankrupts had obtained judgment against them, and had levied upon the property in question, the silk company could not have defeated the execution by attempting to exercise its right to take possession of the bankrupts' material. Secret liens against property are obnoxious to the law of Pennsylvania, and, at the best, the privilege now sought to be invoked by the silk company was a secret lien, not made known to the public by being put upon record,—indeed, there is no provision of law for recording such contracts,—and not actually disclosed to the creditors, so far as appears from the testimony now before the court. I think, therefore, it is clear that the trustee, under section 67a, is entitled to invoke the aid of the law of Pennsylvania to prevent the enforcement of this privilege, although the bankrupts themselves might not have been allowed so to do; and, if the Pennsylvania law upon this subject is applicable, there can be no doubt that the defense now under discussion is unavailing.

The second defense only needs a few words. It was proved that

in December, 1900, the bankrupts applied to the silk company for an advance of money, and that the company advanced them $15,000 more than the contract required, believing—so it was testified by Mr. Lipps—that the material upon the ground was sufficient security for this sum. It is urged that this transaction was equivalent to a pledge of this material, and therefore that the company was justified in taking possession of it in repayment of the advance. The testimony, in my opinion, does not justify such a conclusion. It does not show that a contract of pledge was made between the bankrupts and the company; but, at the most, only shows that the company probably believed that, if the contractors should get into difficulties, there was enough material on the ground that could be taken possession of by the company under the fifth article to reimburse the sum advanced. Even assuming, however, that a contract of pledge was actually made, it would be ineffective, because no possession was ever taken by the silk company under the contract; and therefore if, under such circumstances, any lien could be said to exist, it would be a secret lien, and, like the privilege reserved under the fifth article, would also be stricken down by the Pennsylvania law in favor of other creditors.

It is, I think, unnecessary to pursue the subject further. In my opinion, the plaintiff is entitled to recover, and the defendant's motion for judgment notwithstanding the verdict is accordingly refused.