## DUPLAN SILK CO. v. SPENCER.

(Circuit Court of Appeals, Third Circuit. May 7, 1902.)

1. BUILDING CONTRACT—CONSTRUCTION.

A provision of a building contract that the owner may, in case of default by the contractor, proceed to finish the building himself, and, to that end, use materials brought by the contractor on the ground for the purposes of the building, being accountable to the contractor for any excess of the unpaid contract price over the cost of completion, is not one for a forfeiture, which must be strictly construed against the owner, since it does not involve the taking of any property of the contractor by way of penalty or punishment, but is in the interest of both parties, and is to be fairly construed to effect its purpose.

2. SAME—LIEN OF OWNER ON MATERIALS DELIVERED.

Under such a provision, materials brought by the contractor upon the owner's premises, and appropriated to the building contracted for, are to be considered as so far delivered into the possession of the owner as to make them a security for advances made by him on the contract, and to vest in him a qualified right of property in the same, consistent with the right of the owner to use them in the fulfillment of his contract.

3. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—VALIDITY OF LIENS.

The owner of a building in course of erection by a contractor, given by the contract a general lien on all materials which are delivered on the premises for the fulfillment of the contract, who makes advances to the contractor upon an oral agreement that materials previously so delivered shall stand as security therefor, does not thereby make a new contract which can be held to give him an unlawful preference under the bankrupt law; but its effect is merely to render specific a previous general lien, and his possession is such that the property cannot be disposed of by the contractor, or levied upon by his creditors, and it will not, therefore, pass to the latter's trustee in bankruptcy by virtue of Bankr. Act 1898, § 70; nor will his failure to record the lien, in view of such possession, render it invalid under a state statute of frauds, or as against the trustee in bankruptcy under section 67a.

115 F.—44

**4. SAME—ACTION BY TRUSTEE TO RECOVER PROPERTY—DEFENSES.**
    A trustee in bankruptcy, seeking by a proceeding at law to enforce the title of the bankrupt to personal property, will be subject to all legal and equitable claims of others to the property which exist against the bankrupt, and which are not in fraud of the bankruptcy law or the rights of general creditors.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

R. C. Dale, for plaintiff in error.

T. M. B. Hicks, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This was an action of trover, called under the Pennsylvania practice act of 1887 an action of trespass. It was brought by the defendant in error, as trustee in bankruptcy of the estate of Bennett & Rothrock, who were contractors and builders, against the Duplan Silk Company, charging the conversion of certain chattels, consisting principally of lumber, iron work, nails, cement, brick and sundry builder's utensils, of which a complete schedule is given in plaintiff's statement. There is little or no dispute about the essential facts in the case, as disclosed by the evidence. They are substantially as follows:

Bennett & Rothrock were builders, and, as such, entered into a written contract with the Duplan Silk Company, bearing date August 30, 1899, to erect a silk mill for the defendant at Hazleton, Pa., providing all materials and performing the work mentioned in the specifications and shown in the drawings prepared by the architect. By this contract, it was provided that the sum to be paid by the owner to the contractor, for said work and materials, should be $76,000, payable in installments as the work progressed to certain specified stages, the first installment being $5,000 and the remaining ones $10,000 each. On the same day, a supplemental contract, according to the form of contract recommended for general use by the American Institute of Architects, was executed between the parties.

About December 15, 1899, when the excavations and foundation walls and piers had been completed, and the brick walls partly built, work on the building was lagging. Although, according to the terms of the contract, only the first installment of $5,000 had become due, and it had been paid, Rothrock, one of the contractors, came to Emory J. Lipps, general manager of the Duplan Silk Company, and through whom, as its agent, the building contract was made, and asked whether certain moneys could not be advanced beyond what the contract called for. Lipps told him that, personally, he could not advance any money, but that if he presented his case to the board of directors of the Duplan Silk Company, they might be willing to do so. Accordingly, on December 16th, there was a meeting in New York City, between Rothrock and those representing the company, at which Rothrock stated that he was very short of money, and that unless he could get some from the company in advance, he could not pay for the material he had ordered, and the men would put him into bankruptcy. They had already made him a payment of $5,000 and no

other installment was then due. The testimony of Lipps, as to the transaction between the parties, proceeds as follows:

"We had a meeting in New York City, and upon the promise of Mr. Rothrock that he would at once put more men at work and continue the work, if we advanced him $15,000, he would at once go to work and complete the building. Of course he could not complete it in the time that was specified, but he claimed that he had so much material on the ground that we were fully covered by advancing him that money. We knew that material was there, and we consequently gave him the $15,000. That was on December 16th. * * * Q. So the amount you had paid to the fifteenth of December was $20,000, although he was entitled to but $5,000? A. Yes, sir; he was entitled to $5,000 when the excavations were done, and $10,000 when the brick walls were complete. The brick wall is only a very small part of the building, because the building is a one-story building. The valuable part is the interior work. We had advanced him $5,000, and we advanced him $15,000 more. He argued that we would be perfectly safe in doing so, as he had the materials on the ground."

After this money was advanced, work was continued for a short time, and by Christmas, or a day or two thereafter, it was practically abandoned. On the 13th of January, 1900, Bennett & Rothrock, on their own petition, were adjudicated bankrupts, and W. H. Spencer, defendant in error, was duly appointed and qualified as trustee of their estate. The chattels in controversy were scheduled among their assets, and there were numerous judgments against them, and executions issued thereon, when the petition was filed and the adjudication made.

On January 11, 1900, certain letters from the Duplan Silk Company were sent to and received by Bennett & Rothrock, and, as they appear in the record, are as follows:

"South Bethlehem, January 11, 1900.

"Messrs. Bennett & Rothrock, Williamsport, Pa.—Gentlemen: We hereby notify you that on account of your failure or inability to prosecute the work on our silk-mill building at Hazleton, Pa., according to our contract, dated August 30, 1899, we hereby terminate the said contract, and we will enter and take possession of above-named premises on Monday, January 15, 1900, for the purpose of completing the work comprehended under said contract in accordance with provisions made therein.

"Yours truly,        Duplan Silk Company,
          "E. J. Lipps, General Manager."

"South Bethlehem, January 11, 1900.

"Duplan Silk Company, New York City, N. Y.: I, the undersigned, acting as overseer and contractor for the architects of the Duplan Silk Company building, in course of construction at Hazleton, Pennsylvania, do hereby certify that the contractors, Bennett & Rothrock, of Williamsport, Pa., through their failure since January 8, 1900, to prosecute the work on said buildings in accordance with their contract with said Duplan Silk Company, under date of August 30, 1899, have given just cause for the owners to terminate said contract as provided for therein.    E. J. Lipps."

"South Bethlehem, January 11, 1900.

"Messrs. Bennett & Rothrock, Williamsport, Pa.—Dear Sirs: Inclosed we send you a notification forwarded to us by Mr. E. J. Lipps, who acts as contractor and overseer for the architects in the construction of the mill at Hazleton. Yours truly,       Duplan Silk Company."

It is admitted by counsel for plaintiff in error that these letters were intended to be pursuant to the fifth article of the supplemental contract, which provides as follows:

"Art. 5. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owner shall· be at liberty, after ——— days' written notice to ᵗʰe contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default shall be audited and certified by the architects, whose certificates thereof shall be conclusive upon the parties."

On January 15th, the plaintiff in error took exclusive possession of the building materials and tools, which constitute the property in controversy in this action, and which had been brought upon the premises by Bennett & Rothrock for the purpose of being incorporated in the mill, for the building of which they were contractors. The plaintiff in error then proceeded to use the materials in the erection of the building, upon which Bennett & Rothrock had defaulted. Thereafter, Spencer, defendant in error, as the trustee of the bankrupt estate, demanded from the plaintiff in error these materials. The demand was refused; whereupon, this action of trover for the recovery of the same was commenced by the said trustee.

Upon this evidence, the court below gave a binding instruction in favor of the plaintiff below, reserving the question of law, whether there was any evidence to go to the jury in support of the plaintiff's claim, and subsequently, on the motion of defendant below for judgment, non obstante veredicto, directed judgment to be entered for the plaintiff and against the defendant. (C. C.) 112 Fed. 638.

The question for the court here is whether the court below was right, upon this state of facts, in refusing the defendant's motion for judgment non obstante veredicto, and in directing judgment to be entered for the plaintiff and against the defendant.

The learned judge of the court below regarded the notices given by the owner to the contractor, on the 11th of January, and the subsequent taking possession, on the 15th of January, of the materials brought on the premises by the contractor for the purposes of the building, as proceedings to enforce a forfeiture under article 5 of the supplemental contract, and as such to be strictly construed. Taking this view of the character of the provisions of said article 5, he decided that there had not been such a strict compliance by the owner with

the requirements of said article 5, as to entitle it to claim a forfeiture, and that the unqualified and absolute property in the materials in question, passed to the trustee of the bankrupt contractor on the date of the adjudication of the bankruptcy. It was on this view, principally, that the judgment was entered which was equivalent to peremptory instructions to the jury to find for the plaintiff. On the undisputed facts, however, of this case, we think there was fundamental error in the position thus taken by the court below.

We do not think that the notices given by the owner, on the 11th of January, and the certificate of the architects on the same day, or the taking exclusive possession of the materials on the ground, on the 15th of the same month, are to be regarded as steps to enforce a forfeiture, nor that the right reserved to the owner under article 5 of the supplemental contract, is to be held as a stipulation to that effect. The contract between the parties, contained in said article 5, is to be construed by its plain terms. So construed, it provides a particular mode, by which the owner of the premises may enforce the general security, evidently intended to be given him, by the materials brought on to the ground by the contractor, and appropriated by him to the purposes of the building under construction. In this, we discover no features of a technical forfeiture. The strictness with which it is sometimes said that a contract involving forfeiture must be construed, is not applicable here. The stipulation is to be neither strictly nor loosely construed, but must be dealt with so as to fairly effect the meaning of the parties, as expressed by the language they have used in their contract. There is in the provision that the owner may, in case of default by the contractor, proceed to finish the building himself, and to that end use materials brought by the contractor on the ground for the purposes of the building, no suggestion of loss of property to the contractor, by way of punishment or penalty. On the contrary, the stipulation carried out under the circumstances described, would tend to minimize the loss that would otherwise accrue to the contractor from his own default. Looking, then, at article 5 to discover the intent of the parties as to this stipulation, we think it is clearly apparent to have been, that the materials brought by the contractor upon the premises, and appropriated to the building contracted for, should be considered as so far delivered into the possession of the owner, as to make them a security for the advances made by the owner. A quasi or qualified right of property in these materials by the owner of the soil, and a possession not inconsistent with the builder's right and duty to incorporate them in the building, would thus result from their delivery by the contractor on the premises, and their appropriation to the construction of the building.

In this view of the case, we are not here concerned with the question, whether the plaintiff in error precisely complied with all the requirements of article 5, in taking steps to make effectual the security furnished by the materials brought by the contractor on the ground. The general contract as to this matter must be taken to mean something, and it would be of little avail to say that the plaintiff in error can take the steps prescribed in article 5 to make this security available, if the materials themselves could be taken away,

as claimed by defendant in error, by the execution of a creditor or the action of a trustee in bankruptcy. The effect of the whole contract between the parties, including article 5 of the supplemental contract, in whatever terms it may be described, was to affix to the materials brought upon the ground and appropriated to the building by the contractor, a charge or interest in favor of the plaintiff in error, consistent with the qualified ownership of the defendant in error, but commensurate with the requirement, that they should furnish security to the plaintiff in error for the performance of the contract and for advances made.

The special oral agreement of December 16, 1899, as set forth in the testimony of Mr. Lipp, general manager for the plaintiff in error, which is not contradicted or disputed, may be taken as a specific appropriation of the materials at that time delivered on the premises of plaintiff in error, as security for the advances then made, freed from the requirements of notice and certification by the architect, contained in the fifth article of the supplemental agreement; and as making effective and available at once the inchoate lien or title of the plaintiff in error to said materials. In other words, by this oral agreement, the qualified possession of these materials by plaintiff in error, was made immediate and unqualified. The security originally intended by the parties, was perfected as to the advances then made.

Nor in this view of the mutual rights of the parties, can it be contended that this oral agreement of December 16, 1899, was an unlawful preference, in fraud of the bankrupt law. It was not a new and independent contract, but a recognition of the old contract, and in furtherance and consummation of its intent. A mortgagor, who puts his mortgagee into actual and unqualified possession of the chattels mortgaged, instead of compelling him to take the formal steps for a foreclosure, is acting in furtherance of the original contract, not making a new one, in the sense that would, in this case, transgress the inhibition of the bankrupt law as to preferential conveyances.

Unquestionably, the defendant in error could not have been heard to challenge the legal and binding effect of this contract, as above described; but their counsel now contend that, even though it be good between the parties, their immediate representatives and volunteers, this contract cannot bind third parties without notice, and that bona fide judgment creditors could have levied upon and sequestered the materials here in question, unaffected by the contract, even though admitted to be binding between the parties. And if creditors could have so attached the property, free from any claim on the part of the plaintiff in error, then it is argued that, under the provisions of section 70 of the bankrupt law, which gives to the trustee any property which might have been levied upon and sold under judicial process against the bankrupt, the unqualified property in these materials vested in the trustee. The statute of Elizabeth, as in force in Pennsylvania, is invoked to declare illegal against creditors any conveyance, pledge or charge of property, unaccompanied by delivery or change of possession, and the court below, taking this view, relies upon section 67, cl. "a," of the bankrupt law, which provides that "claims which for want of record, or for other reasons, would not have been valid liens

as against the claims of the creditors of the bankrupt, shall not be liens against his estate."

In order to arrive at this result, it is assumed that the property in question could have been levied upon and sold under judicial process against the bankrupt, either generally, or because there was no possession in the plaintiff in error, that would make good its claim against creditors of the bankrupt. But this assumption is not warranted. The goods delivered by the contractor upon the premises, for the purpose of being built into the structure contracted for, were sufficiently in the possession of the owner of the premises to protect the lien, claimed as the result of the understanding between the parties to the contract. They were in the possession of the owner of the freehold as fully as they could be, consistently with the right of the contractor to incorporate them in the building. In this respect, this case differs from those cited by defendant in error, in which the materials furnished by the contractor, and in litigation between the parties, were in the exclusive possession of the contractor, never having been delivered upon the premises of the owner. Materials delivered as in this case, are notoriously to all the world, in the qualified possession and ownership of the owner of the freehold, and the creation of a lien or charge, or the making of a conveyance, would not require, or indeed be susceptible of, any further delivery or change of possession, in order to take the case out of the mischiefs of the statute of frauds. To merely say that these materials could have been levied on by judgment creditors of the bankrupt, and thus bring them within the description contained in section 70 of the bankrupt law, of property that, upon the adjudication of bankruptcy, passed to the trustee of the bankrupt, is begging the question. These materials would not, in our opinion, after their delivery on the premises by the contractor, have been liable to such a seizure, for the reasons that we have already stated. The situation of the parties, as the result of the contract between them, was such, that the contractor could have made no disposition of this property, inconsistent with his obligations under the contract, and he could have been prevented in equity, by injunction, from so doing; and equally so could a creditor have been prevented from asserting a right of seizure inconsistent with the interest of the plaintiff in error. In this respect, we think the case is quite within the ratio decidendi of Hauselt v. Harrison, 105 U. S. 401, 407, 26 L. Ed. 1075. The trustee, in bankruptcy, seeking by proceeding in law to enforce the title of the bankrupt, to personal property so situated, will be subject to all legal and equitable claims of others, which exist against the bankrupt, not in fraud of the bankrupt law or the rights of general creditors. Hauselt v. Harrison, supra; Cook v. Tullis, 18 Wall. 341, 21 L. Ed. 933; Yeatman v. Institution, 95 U. S. 764, 24 L. Ed. 589; Stewart v. Platt, 101 U. S. 739, 25 L. Ed. 816; Lumber Co. v. Ott, 142 U. S. 622, 12 Sup. Ct. 318, 35 L. Ed. 1136; Chattanooga Nat. Bank v. Rome Iron Co. (C. C.) 102 Fed. 755.

The law of the contract, as we view it, supports the claim of plaintiff in error, that the right of the owner was a specific contractual right conferred upon it by the original agreement between the parties, and that the subsequent action of the owner in acceding to the request

of the contractor for an advance of $15,000, upon the faith of the materials delivered upon the ground, confirmed and made certain the right of the owner upon the subsequent default of the contractor, to enforce the original contractual right and to apply the materials to the use to which they had been specifically appropriated by the contractor, in delivering them on to the premises of the owner for use in fulfilling the contract.

We disagree, also, with the position taken by the learned judge of the court below, in regard to the effect of the oral agreement of December 16th, when he says:

"Even assuming, however, that a contract of pledge was actually made, it would be ineffective, because no possession was ever taken by the silk company under the contract, and therefore if under such circumstances any lien could be said to exist, it would be a secret lien, and, like the privileges reserved under the 5th article, would also be stricken down by the Pennsylvania law in favor of other creditors."

What we have already said, as to the effect of the delivery by the contractor of the materials upon the premises of the silk company, in giving it a possession that would protect the lien which we think was intended to be created by the parties in their general contract, and especially in the fifth article of the supplemental agreement, is applicable to the proposition of the learned judge, just quoted. There is no intimation in the testimony that, if this oral agreement was a distinct and independent pledge, it was not, to use the language of section 67, cl. "d," of the bankrupt act, "given or accepted in good faith faith, and not in contemplation of or in fraud upon this act and for a present consideration." The only question, then, is the one upon which the court below expressed itself in the opinion just quoted, to wit, that there was no sufficient delivery or change of possession, to deprive the transaction of the character of a secret lien, as denounced by the law of Pennsylvania in that behalf, in favor of attaching creditors, and therefore of the trustee in bankruptcy. The intention to pledge being clear, and the consideration being substantial and adequate, what other act was necessary, to give the requisite possession to avoid the mischiefs aimed at by the law of Pennsylvania, as founded on the statute of Elizabeth? The materials were already on the land and premises of the company, for the purpose of being incorporated into the building. Could that possession, in pursuance of the pledge, be made more notorious and open by moving them away and bringing them back, or by removing them to other land of the silk company? We think not. Goods pledged or conveyed, while so situated, are within none of the mischiefs of the statute of frauds, and can be the occasion of no deception to a creditor of the contractor, any more than if fully incorporated into the building, in which case, no assertion of a right in a creditor to attach is suggested.

On the whole case, therefore, we think the learned judge of the court below erred in not granting defendant's motion for judgment, notwithstanding the verdict. The judgment below is therefore reversed, with directions to enter one in favor of the defendant.