In re A. P. WILSON & CO.

(District Court, E. D. Pennsylvania. February 12, 1910.)

No. 3,180.

BANKRUPTCY (§ 140*)—TITLE TO PROPERTY—LIENS.

Where parties who contracted to furnish and set tile for buildings in the course of erection assigned their contracts to a trust company as security for money borrowed, but did not attempt in any way to pledge the tile, the trust company is not entitled, as against the trustee in bankruptcy of the contractors, to the proceeds of sale of the tile which had been delivered at the buildings.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of the bankruptcy of A. P. Wilson & Co. Proceeding to review order of referee. Affirmed.

Arthur G. Dickson, for Aldine Trust Co.
John J. Foulkrod, Jr., for trustee.

J. B. McPHERSON, District Judge. The bankrupts had agreed as subcontractors to furnish and set tile for three buildings in course of erection. For one of these buildings the arrangement was rather loose, but for present purposes it may be treated as a contract, and not as a mere understanding. In order to carry out their agreements, the bankrupts had delivered some tile at each of the buildings, and these articles were on the respective premises when the creditors' petition was filed. The tile was turned into cash by agreement, and the money is in the hands of the Aldine Trust Company awaiting the decision of the controversy between that company and the trustee.

The trust company's claim is based upon several agreements with the bankrupts, which need not be set out in detail. Their effect is to assign to the trust company the bankrupts' interest in the three subcontracts as collateral security for money borrowed, and the trust company's right to the proceeds of the tile depends upon the nature of the company's right in the tile itself. It is not contended that the assignments attempted to pledge the physical property or to deal with it directly in any other way. As the brief of counsel for the trust company states, "the trust company does not claim, and never did claim, a possessory lien on the tile by virtue of a delivery to it." The assignments merely transfer the bankrupts' interest in the subcontracts, and, of course, could only be of any value to the trust company if the bankrupts should complete these contracts and earn the right to be paid for the work. No one could be sure that the contracts would ever be carried out, or that anything at all would be due the bankrupts thereon. The owners of the buildings might abandon the operations, or might for good cause refuse to permit the bankrupts to do the work, or the bankrupts might themselves abandon the contracts and otherwise dispose of the tile, or they might do the work so badly that the damages thereby occasioned might fully offset their claim to the contract price. These and other contingencies might so affect the bankrupts' interest in the subcontracts that the assignments would find nothing valuable to operate upon, and the trust company would be obliged to look to its legal remedies for such satisfaction as might be attainable. The point to be insisted upon I think is that the trust company concededly had no claim against the tile itself. The assignments gave it none; the tile was not in its possession; there was no agreement to deliver the property to it by way of pledge or for any other purpose; and therefore the possession taken by the trust company after the bankruptcy had no legal justification. The tile belonged to the bankrupts when the assignments were made. Either then or soon thereafter it was delivered at the incomplete buildings in order that it might be set in place; but the trust company had nothing to do with the buildings, either as owner or as contractor, and delivery upon these premises was in no sense delivery to the trust company. Indeed, no

such thought was in the mind of any person connected either with the building operations or with the loans.

The case of Duplan Silk Co. v. Spencer (C. C. A., Third Circuit) 115 Fed. 689, 53 C. C. A. 321, is essentially different. There a contractor agreed to build a mill for the silk company, and delivered material upon the premises for that purpose. The company advanced him money on the credit of the material, and upon his default took possession of it under a provision of the contract that authorized such action. The contractor went into bankruptcy, and his trustee claimed the material, because, inter alia, possession had not been delivered to the company. But the Court of Appeals held—to quote from the syllabus—that:

"A provision of a building contract that the owner may in case of default by the contractor proceed to finish the building himself, and to that end may use materials brought by the contractor on the ground for the purposes of the building—being accountable to the contractor for any excess of the unpaid contract price over the cost of completion—is not one for a forfeiture, which must be strictly construed against the owner, since it does not involve the taking of any property of the contractor by way of penalty or punishment, but is in the interest of both parties, and is to be fairly construed to effect its purpose."

And that:

"Under such a provision, materials brought by the contractor upon the owner's premises, and appropriated to the building contracted for, are to be considered as so far delivered into the possession of the owner as to make them a security for advances made by him on the contract, and to vest in him a qualified right of property in the same, consistent with the right of the owner to use them in the fulfillment of his contract."

There seem to be vital differences between that case and this. There the material was delivered on the premises and put into the possession of the owner of the building, who had a right to have the material used in the construction. Here the trust company had no interest in the building, and did not receive possession of the material. There the contract empowered the owner to take and use the material in certain contingencies. Here there is no such authority, for the only agreement with the bankrupts deals with a wholly different subject, namely, the money to which they may be entitled when or if they complete their contract.

Neither does Hurley v. Railway Co., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729, seem to be in point. A coal company agreed to furnish daily supplies of coal to a railway company. The coal company became embarrassed financially, whereupon the railway company came to its relief by advancing money, but with the understanding that the loan should be repaid by the subsequent delivery of coal. Afterwards the coal company went into bankruptcy. The District Court held that the arrangement was a separate and independent contract, and furnished no ground for a lien upon the property for its repayment. But the Court of Appeals and the Supreme Court held otherwise; the Supreme Court saying (page 134 of 213 U. S., page 469 of 29 Sup. Ct. [53 L. Ed. 729]):

"Equity looks at the substance, and not at the form. That the coal for which this money was advanced was not yet mined, but remained in the ground to be mined and delivered from day to day as required, does not change the trans-

action into one of an ordinary independent loan on the credit of the coal company or upon express mortgage security. It implies a purpose that the coal as mined should be delivered, and is from an equitable standpoint to be considered as a pledge of the unmined coal to the extent of the advancement. The equitable rights of the parties were not changed by the commencement of bankruptcy proceedings. All obligations of a legal and equitable nature remained undisturbed thereby. If there had been no bankruptcy proceedings, the coal as mined was, according to the understanding of the parties, to be delivered as already paid for by the advancement."

In other words, the parties intended to make, and did make, an equitable pledge of the coal, and the pledge was not only good between themselves, but was good also against the trustee in bankruptcy. Here, however, there was neither pledge nor intent to pledge. The only agreements between the bankrupts and the trust company related to a different subject, namely, the contingent proceeds of the subcontracts.

I think it is clear that the trust company had only an indirect interest in the tile, and that the trustee has the superior right to the fund.

The order of the referee is affirmed.