No. 22,128.

THE DAVIDSON & CASE LUMBER COMPANY, *Appellee*, v. R. A. ANDERSON et al. (WIDMER ENGINEERING COMPANY, *Appellant*).

SYLLABUS BY THE COURT.

1. REPLEVIN—*Concrete Forms Used in Construction of Building—Ownership—Subcontractor's Chattel Mortgage Valid.* In the erection of a building a subcontractor who had undertaken to furnish and install the forms into which concrete was to be poured, sublet this part of the work to a second subcontractor. In the contract between them it was stipulated that if the second subcontractor failed in the performance of the contract, the first subcontractor would be at liberty, after three days' notice to the second, to terminate the employment, enter upon the premises and complete the work, and for that purpose might take possession of all material, tools, and appliances thereon, and to charge the expense of completion to the defaulting subcontractor. After a part of the work had been done, the second subcontractor became unable to proceed with the building, and a notice was served upon him by the first subcontractor that if at the end of three days the second did not resume and continue performance of the contract, the first expected to have the work performed and the contract fulfilled, and would charge the second with the expense ·so incurred. Before the lapse of the three-day period, the second subcontractor executed a chattel mortgage on the forms to parties who had furnished lumber for the forms and money with which to pay laborers on the building. In a controversy between them as to the right of possession of the forms, it is held that the second subcontractor had a right to and held the possession of the forms until three days after the notice was given, and that under the mortgage executed by him to the mortgagees, the latter obtained a superior right to the possession of the mortgaged property.

2. SAME—*Knowledge of Mortgagee.* The fact that the mortgagee knew that the mortgagor was a subcontractor, and further, that he had ceased to work upon the building, did not impair the validity of the mortgage that was executed or the right of the mortgagee to the possession of the property.

3. SAME—*Measure of Damages.* As the forms wrongfully withheld had no market value, it was not improper in proving the damages sustained to show the value of the material and labor involved in making them, the depreciation in their value from the time they were made until the action of replevin was commenced, and the depreciation in them during the time they were illegally detained.

Appeal from Sedgwick district court, division No. 1; RICH-
ARD E. BIRD, judge. Opinion filed February 7, 1920. Affirmed.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey,* and *W.
F. Lilleston,* all of Wichita, for the appellant.

*R. L. Holmes, C. G. Yankey, W. E. Holmes,* and *D. W. Eaton,*
all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action of replevin brought
by the Davidson and Case Lumber Company to recover the
possession of the forms and material used in the construction
of a concrete building, the right to possession being claimed
under a chattel mortgage executed to the lumber company by
R. A. Anderson and his wife. The Widmer Engineering Com-
pany claimed the right of possession under a provision of a
building contract. It was found by the jury that the plaintiff
was entitled to the possession of the property, and a judgment
against the engineering company which had retained posses-
sion of the property was rendered, awarding the plaintiff dam-
ages in the sum of $4,100. The engineering company appeals.

It appears that a contract was let to the Selden-Breck Con-
struction Company to erect a ten-story hotel at Wichita, and
that the company sublet the furnishing and installing of the
forms and frames into which the concrete was to be poured,
to the engineering company, and that company in turn sublet
the furnishing and installation of the forms to R. A. Anderson.
The contract with Anderson was executed on September 13,
1917. Shortly afterwards Anderson purchased the lumber
and material for the forms from the lumber company, and on
November 7, 1917, he began the work of making and install-
ing the forms for the concrete construction. This work was
continued until he had reached the fourth story, following the
ordinary plan that when the concrete for the first story was
poured and had hardened, the forms were removed and used
for the story above. On March 2, 1918, and while at work
on the fourth story, Anderson found himself in financial stress
and unable to pay his workmen or go forward with the work.
At that time he was owing the lumber company $3,700 for
material used in his forms, and also $400 to a bank, which he

had borrowed to carry on the work. The claim of the bank was assigned to the lumber company, and on March 5, 1918, Anderson executed a chattel mortgage on the forms and appliances he was using in the work to the lumber company. On the evening of March 2, after the engineering company had been informed of Anderson's default, it caused a notice to be served upon him to the effect that if Anderson did not proceed with the work, the engineering company would at the end of three days cause it to be performed by others, at the expense of Anderson. The lumber company served notice upon the Selden-Breck company and the engineering company that it deemed itself insecure and demanded possession of the property under its mortgage. The engineering company claimed the right to the possession of the same under its contract with Anderson, and refused to deliver possession. The present action was then brought, and the engineering company gave a redelivery bond, retaining possession of the forms and material, and has continued to use them throughout the construction of the hotel. The right to the possession of the property was the principal question involved in the controversy, and with it the extent of damages sustained by the plaintiff because of the detention and use of the property by the engineering company. In connection with the general verdict that the lumber company was entitled to the possession of the forms and appliances, the jury returned special findings to the effect that Anderson was in the possession of the property at the time the chattel mortgage was executed, that the lumber company had a special ownership in the property to the extent of $4,268.28, and found that the property had deteriorated in value since the commencement of the action, to the extent of $4,100. It is insisted by the engineering company that it had a superior right to the possession of the property under section five of its contract with Anderson, which is as follows:

"5. Should the subcontractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the contractor, with the approval of the architects, shall be at liberty, after three days' written notice to the subcontractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the

subcontractor under this contract; and if such refusal, neglect or failure is sufficient ground for such action the contractor shall also be at liberty to terminate the employment of the subcontractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to furnish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the subcontractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the contractor in finishing the work, such excess shall be paid by the contractor to the subcontractor; but if such expense shall exceed such unpaid balance, the subcontractor shall pay the difference to the contractor. The expense incurred by the contractor as herein provided, either for furnishing materials or finishing the work, and any damage incurred through such default, shall be chargeable to the subcontractor."

In pursuance of this provision the engineering company gave the following notice to Anderson:

"MR. R. A. ANDERSON, St. Louis, Missouri.

"DEAR SIR—This is to notify you, R. A. Anderson, that you have failed and neglected to fulfill the items of your agreement with the Widmer Engineering Company, of St. Louis, Mo., as contained in article 5 of your contract with the said Widmer Engineering Company. You have further admitted and represented to the said Widmer Engineering Company that you would be unable to continue under the said contract. It appears further that you will be unable to fulfill said contract.

"This, therefore, is a three days' notice provided for in said article 5 in said contract, and you are further notified that unless you fulfill completely each item in said article 5 in said contract, with the said Widmer Engineering Company, that said company, after three days' notice, expects to have said work performed and said materials furnished and said contract fulfilled in whatever particular you may fail, and that the expense for said work shall be charged against you and deducted from any money in the hands of the said Widmer Engineering Company owing to you.

"This notice is given as provided for in said contract and is sent by the approval of the architect for said building.

            "(Signed)        E. V. GUYTHER,
                 *"Widmer Engineering Company."*

It appears that the chattel mortgage had been executed and filed for record before the expiration of the time fixed by the notice. Under the facts, the lumber company had the superior right to the possession of the mortgaged property.

While the property was used on the hotel premises it comprised forms and appliances which did not enter into the construction of the building. It was the property of Anderson, when the mortgage was executed, and the engineering company did not even assume to be entitled to the possession of the property when the notice was given. The contract provided that if Anderson neglected or failed to perform the condition of the contract, the engineering company would be at liberty after three days' notice to terminate the employment, take possession of the material, tools and appliances used in completing the work, and further might appropriate any unpaid balance due Anderson on the contract so far as it was needed to finish the work. Instead of claiming the right to immediate possession, the engineering company by its notice, in effect, said to Anderson: "Your failure to continue the work has been brought to our attention and if you do not proceed with it in fulfillment of the terms of the contract, we will, at the expiration of the three days fixed in the notice, provide the material and complete the work at your expense, and such expense will be deducted from any money in our hands owing to you. The lumber company was given a specific lien on the property while it was owned and in the possession of Anderson, and before the engineering company had the right to take possession of it. Its right to possession did not accrue until the expiration of the three-day period provided for in the contract, the measure of which was fixed in the notice itself. It is urged that the inability of Anderson to complete the contract was well known to the lumber company on March 2, and before the prescribed limit had expired. However, the engineering company did not assert a right to possession until after that period, and only proposed to assert the right and go into possession in case Anderson did not then go on with the work in fulfillment of his contract. Much reliance is placed by the engineering company upon *Duplan Silk Co. v. Spencer,* 115 Fed. 689, where it was held that materials brought by a contractor on the premises for the erection of a building under a like contract gave the owner a qualified right to the material as against the claim of a trustee in bankruptcy who was seeking to subject the property to the claims of general creditors. The essential facts of that case differed materially from those involved here. There the contract was

between a contractor and the owner of the premises upon which the building was being erected. The material delivered upon the land of the owner was brought there for the purpose of being incorporated in the structure which the contractor was building. Besides, there was a supplemental oral agreement between the parties that the material so delivered should stand as security for an advance of a large sum of money made by the owner to the contractor. In this situation it was decided that the owner had a qualified possession and right in the materials which he would assert against the contractor or the general creditors represented by the trustee in bankruptcy. In this case the contract is not between the owner and the contractor, but is between two subcontractors. The forms and appliances involved here were not intended to be incorporated into the building under construction as was the material in the cited case. There was no supplemental agreement that the forms and appliances should stand as security for an advance of money and no turning over of the possession. In the cited case it was held that the materials which were to be built into the structure were sufficiently within the possession of the owner to protect its right under the agreement made with the contractor, and to give notice of such possession and right to all interested parties. There the contractor could not have asserted a right to possession as against the owner, and the general creditors could only claim such rights as the contractor held. Here the forms and appliances were to be used in erecting the building substantially as tools are used, and were not to be built into the hotel. The exclusive possession of them remained in Anderson, and this was recognized by the engineering company in the notice that it gave. Until this possession was lost, Anderson had the right to mortgage the property and, as we have seen, the mortgage to the lumber company was executed before the lapse of the time specified in the notice. Whatever the right of the engineering company under the contract may be designated, it is clear that it had not acquired possession of the property when the mortgage to the lumber company was executed. The nature of the property is an important element in determining the rights of the parties. All understand that material to be incorporated in a building is in a sense in the possession of the owner, but tools and appliances of a contractor are not so

regarded. Here the forms and appliances had not been purchased by Anderson and were not in existence when the contract in question was made, and the use of them in making the building did not carry notice to the world that another subcontractor had a special interest or right of possession in them. We think the mortgage to the lumber company gave it the superior right to the property. (*Titusville Iron Co. v. City of New York,* 207 N. Y. 203.) The case of *In re Shelly,* 235 Fed. 311, and the same title in 242 Fed. 251, follow the authority of *Duplan Silk Co. v. Spencer,* supra, and are not applicable to the facts of the present case.

The right of the lumber company was not impaired by the fact that one of its officers knew that Anderson had a subcontract under the engineering company, nor that he had ceased work before the mortgage was executed. The lumber company had a valid claim and was entitled to the benefits of its diligence in securing a lien until someone else gained a superior right. Besides, the engineering company itself interpreted its contract that it had no right to possession unless Anderson should fail to resume and carry on the work at the end of the three days named in the notice.

A question is raised as to the measure of damages sustained through the use and detention of the property by the engineering company. Market value could not be shown, as property of that character manifestly had no market value. The forms were made for a special purpose, and their value was greatly lessened by use. In the absence of market value, it was proper to show the value of the material and labor in making them and any depreciation from their use until they were wrongfully detained by the engineering company. That company having given a redelivery bond and retained the property, became responsible for any deterioration in the value of the property since the action was commenced, and this the jury has specially found.

A motion was made to dismiss the appeal because the engineering company had set forth the judgment appealed from in an action brought in a court in Missouri. On the papers presented we have concluded that the engineering company did not intend to treat the judgment as a finality or waive its appeal, and hence the motion to dismiss was properly overruled.

Finding no error in the record, the judgment is affirmed.